184 U.S. 162 (1902)
HATFIELD
v.
KING.
No. 221.
Supreme Court of United States.
Submitted November 11, 1901.
Decided February 24, 1902.
APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF WEST VIRGINIA.
*164 Mr. Holmes Conrad and Mr. Edward C. Lyon on behalf of interested parties, petitioners to dismiss the appeal.
Mr. Maynard F. Stiles opposing.
Mr. W.P. Hubbard, Mr. C.W. Campbell and Mr. John H. Holt filed a brief on behalf of intervenors.
Mr. Stuart Wood filed a brief on behalf of the State of West Virginia.
MR. JUSTICE BREWER, after making the above statement, delivered the opinion of the court.
It is contended by the appellants that the decree in the Circuit Court against them ought to be set aside because they have not had the hearing in that court to which they were entitled by law; that they were not served with process; that counsel unauthorized by them entered their appearance, and after having wrongfully entered their appearance failed to take the proper steps for the protection of their rights.
It is also contended (though by other parties than the appellants) that there was no real controversy between the parties *165 nominally opposed to each other, and that the litigation was in fact carried on under the direction and control of the plaintiff. It is well settled that questions of this kind may be examined, upon motion, supported by affidavits, and that it is the duty of a court to make such inquiry, in order that it may not be imposed on by an apparent controversy to which there are really no adverse parties. Shelton v. Tiffin, 6 How. 163, 186; Lord v. Veazie, 8 How. 251; Cleveland v. Chamberlain, 1 Black, 419, 426; Wood Paper Company v. Heft, 8 Wall. 333; Tennessee &c. Rd. Co. v. Southern Tel. Co., 125 U.S. 695; South Spring Gold Co. v. Amador Gold Co., 145 U.S. 300; California v. San Pablo &c. Railroad, 149 U.S. 308.
In Cleveland v. Chamberlain, it was said, quoting from Lord v. Veazie: "Any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law, which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended and treated as a punishable contempt of court."
In Shelton v. Tiffin, the question was as to the validity of a judicial sale, and it appeared that one of the defendants in the proceedings had not been served with process; that an attorney had entered an appearance for him but had done so inadvertently and without authority, and it was said: "An appearance by counsel under such circumstances, to the prejudice of a party, subjects the counsel to damages; but this would not sufficiently protect the rights of the defendant. He is not bound by the proceedings, and there is no other principle which can afford him adequate protection. The judgment, therefore, against L.P. Perry must be considered a nullity, and consequently did not authorize the seizure and sale of his property."
If it be true, as claimed by some of the moving parties, that this is a collusive suit, that there is no real controversy between the plaintiff and defendants, that the plaintiff has been controlling the litigation on both sides with a view of obtaining an opinion on a matter of law in which he is interested, the transaction is one which, as stated, courts of justice have always *166 reprehended, and should be treated as a punishable contempt, and no decree entered under those circumstances should be permitted to stand.
So far as respects permitting the decree to stand, the same result would follow even though there were no collusion, if the appearance of counsel was, in fact, not authorized or ratified by the defendants; and to that matter alone shall we direct our attention.
Before any proceedings could rightfully be taken against the defendants it was essential that either they be brought into court by service of process or that a lawful appearance be made in their behalf. Confessedly they were not served with process, and they now deny the right of counsel to have entered an appearance for them. The evidence upon this, as well as kindred questions, is principally in ex parte affidavits. The appellants were respectively the widow and daughter of Joseph Hatfield, and claimed title to the various tracts by inheritance from him. It appears that in 1895 an action of ejectment was brought by King against several parties, these appellants among the number. Mrs. Hatfield was led to employ in that case the same counsel who entered her appearance in this. We do not stop to inquire into the circumstances which it is alleged attended that employment. She swears that it was simply for that action and a suit ancillary thereto brought to enjoin the cutting of timber; that she never employed him in any other matter, and knew nothing of the pendency of this suit until after the decree against her and the appeal to this court. She also swears that she never attempted to act for her daughter in preparing for the defence of any suit or action, or in making any arrangements for her. Mrs. Browning testifies that at the time of the ejectment suit she was the widow of John Rutherford; that on December 25, 1895, she married her present husband, Albert Browning; that she had no notice or knowledge of the present suit, and never directly or indirectly employed or authorized any one to appear for her therein, or in any other controversy or matter pertaining to said lands; and further, never authorized any person to employ said counsel or any other attorney to appear and represent her in this suit.
*167 On the other hand, the counsel's affidavit is that he was employed by Mrs. Hatfield in the prior action, and supposed he was authorized by the scope of that employment to appear for her in this suit; that he had the title papers of both the appellants in his possession and had no suggestion of any revocation of his authority. He introduced a copy of a letter from Mrs. Hatfield, which supported his claim of employment, at least in the ejectment case. While he testifies to having met and conversed with Mrs. Hatfield, he does not state that he ever met Mrs. Browning or had any conversation or correspondence with her, although he does state in a general way that she sanctioned and ratified the action of her mother in employing him.
We do not deem it necessary to mention all the matters of evidence, but it seems to us quite clear that, whatever may have been his understanding of the matter, the counsel was not authorized to appear for Mrs. Browning. She had in fact never employed him in any litigation in respect to these lands or otherwise, nor had she authorized any one to employ him, and she had no notice of the pendency of this suit. As to Mrs. Hatfield, while she did at one time employ him in other litigation, she knew nothing of the pendency of this suit until after the decree and the appeal, and if the employment in the ejectment action was sufficiently broad to cover all future litigation of any kind in respect to the land, it would seem to have been so only in consequence of a contract which she says was made, and which, if made, would stamp the whole transaction with wrong.
We do not stop to inquire whether the course pursued by counsel was under the circumstances the best that could have been taken for the protection of the appellants' rights. They were entitled to notice of the pendency of the suit, to select such counsel as they chose and to be guided by his advice and judgment, even though that advice and judgment should prove to be erroneous.
We have refrained from spreading upon our records a detailed statement of the charges and countercharges made in the various motions and affidavits that have been filed, and have only referred to so much as seemed necessary for the *168 present disposition of the case. But our reticence in this respect must not be taken as expressive of a purpose to ignore them. The charges are serious ones, affecting the integrity of counsel, commended, by the fact of admission to the bar of the Circuit Court, to the confidence of the community. They involve the due administration of justice in that court and cannot be passed without notice and action. It is not enough that the doors of the temple of justice are open; it is essential that the ways of approach be kept clean. We refrain from extended comment because, as heretofore stated, the testimony is mainly by ex parte affidavits, which are often, this case being no exception, quite unsatisfactory, and it is only through the sifting process of cross-examination that the real facts can be disclosed. When the truth is ascertained, if there be wrongs as charged, the language of judicial condemnation should be clear and emphatic, and a punishment inflicted such as the wrongs deserve; and if no wrong has been done the conduct of counsel will be cleared from suspicion. It is fitting that this investigation should be had in the first place in the court where the wrong is charged to have been done and before the judge who, if the charges are correct, has been imposed upon by counsel, and it may be wise that both examination and cross-examination be had in his presence.
The order, therefore, is that this case be remanded to the Circuit Court, with instructions to set aside the decree as well as the appearance of defendants, and to proceed thereafter in accordance with law; and also to make a full investigation, in such manner as shall seem to it best, of the various charges of misconduct presented in the motions filed in this court, and to take such action thereon as justice may require.
It is so ordered.
MR. JUSTICE HARLAN was not present at the argument of this case and took no part in its decision.