RALPH·W. FARRIS, ATTORNEY GENERAL,
EX. REL. DANA BOWKER, NATHANIEL M. HASKELL,
RALPH A. LEAVITT, FRED B. KELSEY AND CLIFFORD C. BRUNS

*vs.*

HARRY C. LIBBY.

Cumberland.    Opinion, October 3, 1945.

W. Mayo Payson,

Nathaniel M. Haskell, for the petitioners.

Harry C. Libby, respondent, Pro se.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MUR-
CHIE, JJ.

THAXTER, J.   The attorney general of the state on the rela-
tion of certain citizens and taxpayers of the City of Portland
petitioned a justice of the Supreme Judical Court for a writ of
mandamus to compel Harry C. Libby, who it is alleged, holds
the office of councilman of the City of Portland, to countersign
a certain warrant drawn on the city treasurer in the sum of
$19,353.12 for the payment of certain wages and salaries and
other debts owed by the city, the said Libby being the officer
duly designated by the council to countersign such warrants.
The alternative writ issued, to which the respondent filed a
return stating that by reason of the acceptance by the voters
of the city at an election held September 10th, 1945, of an act
to amend the charter of the City of Portland, he had ceased
to be a councilman in and for the City of Portland. A traverse
was duly filed to this return. The justice to whom the petition
was addressed after a hearing ordered the peremptory writ to
issue. To this ruling the respondent filed exceptions, which, in
accordance with the provisions of Rev. Stat. 1944. Ch. 116,
Sec. 18, have been certified to the chief justice and are now
before this court.

The controversy has arisen out of the legislative attempt,
Priv. & Sp. Laws 1945, Ch. 113, to amend the charter of the

City of Portland granted in 1923, Priv. & Sp. Laws 1923, Ch. 109. The purpose of the legislature was not to repeal the original charter, or to abolish the form of government thereby established, but to make changes in the composition of the city council therein provided for. By these changes the number of councilmen is increased from five to nine, their terms are shortened from five years to three, and instead of being elected at large, three of the nine are to be elected at large and six from districts established by the amending statute. Except for these changes, the act was left as it had been. As a piece of draftsmanship, the amendment leaves much to be desired. There are apparent omissions and ambiguities.

Firstly, in spite of the clear intent to change the number of councilmen from five to nine, Art. V, Sec. 1, of the original act was left unchanged which provided for the election of only five with an election each year on the first Monday of December to fill the vacancy of the one councilman whose term should expire. The draftsman of the amending act in failing to amend this section apparently lost sight of the fact that, with the increase in the number of councilmen and the shortening of their terms, there would be more than one vacancy to be filled each year.

Secondly, section 4 of the amending act makes provision for the submission of the act for approval to the legal voters of the City of Portland "at the next general election therein to be held on the 2nd Monday of September, 1945." As a matter of fact there would be no "general election" on that date.

Thirdly, section 4 provides that the act "shall take effect for all the purposes" of the act immediately on its acceptance by the voters at the above election. It is to be noted that section 3 of the amending act repeals Art. II, Sec. 2 of the original act which among other things provided that each member of the council "shall hold office until his successor is elected and qualified." In the clause which is substituted for this, no provi-

sion is made for holding over by members of the old council after the act should take effect and until the new members elected in December should assume office.

The respondent, who is chairman of the council as it was established by the original act, has refused to carry out the duties of his office, because he claims that under the letter of the statute he was legislated out of office when the voters accepted the amendment to the charter at the election held on Monday, September 10, 1945. The pleadings indicate that the decision of the respondent not to countersign the warrant was not made in the exercise of any discretion on his part. It is conceded that the warrant was valid and called for the payment of money duly owed by the city. The only reason given for his refusal to sign was that he was not, when called on to do so, a member of the city council. Whether he was is the only question before the court.

The result of the respondent's refusal has been that many necessary municipal functions are at a standstill. City pay rolls have been met only by the adoption of cumbersome expedients. The seriousness of the problem gives to this court, as it should to the administrative officers of the city, good reason to question whether the legislature ever intended the dire consequences which would result from a literal reading of the amending statute. And it is the intent of the legislature which controls, not the particular language which has been used to express that intent. It is the obligation of all concerned, and the particular duty of this court, to approach the solution of a problem such as this, not in a spirit of captious insistence on the letter of the law, but with tolerance and understanding to carry out its spirit. To that end, all parts of the statute should be read as a whole; ambiguities should be resolved; we should seek to neutralize the effects of obvious omissions; and we must assume that the legislature did not intend an absurd result or one which is clearly harmful. The principles of law

governing this subject have been many times set forth. See the case of *Steele* v. *Smalley,* recently decided by this court, in which many of the cases from this jurisdiction are collected.

In this spirit let us take up the particular problem before us.

It is not necessary at this time to consider the inconsistency between the provisions of Art. V, Sec. 1, of the original act and the provisions of Sec. 3 of the new law. What we may here say, however, may serve as a guide to a solution of that problem when it arises.

The provisions of Section 4 of the amending statute providing for a referendum "at the next general election" to be held at Portland "on the 2nd Monday of September, 1945" are not invalid. It is clear that the purpose was to provide for an election to be held on the day in question. That it was misdescribed as a "general" election is immaterial. The specific mention of the date and the place controls.

The respondent's contention that the old council ceased to exist on the acceptance by the voters of the act at the September election cannot be sustained. From a reading of the act as a whole, it is perfectly clear that the legislature never intended any such absurd and harmful result. We need only call attention to the fact that Art. V, Sec. 1, which was left intact provides the method for holding the election for councilmen. That section provides among other things for an election on the first Monday of December of each year and that "the city council shall, as soon as it conveniently can, examine the copies of the records of the several wards, certified as aforesaid, and shall cause the persons who shall have been elected councilmen or members of the superintending school committee to be notified in writing of their election, . . ." How, it may be asked, was this provision of the statute to be complied with if the old council did not remain in office until that duty had been performed? Can we hold that the legislature in enacting this law intended a result which would in effect invalidate

the statute as a whole, and that the lawmakers purported to set up the machinery for an election which would be an utterly futile proceeding? Though it is not specifically expressed, we think it is absolutely clear that the legislature intended that the old council should remain in office until the new council provided by the amending statute should be qualified to act. There is a striking analogy between the problem here before us and that which we considered in *Inhabitants of the Town of Ashland* v. *Wright,* 139 Me., 283, 29 A. (2d), 747. It was there claimed that the assessors of the town were not legally qualified to hold office because they were not sworn as the statute provided. The statute required that all town officers should be sworn by the town clerk. The town clerk was sworn in by the moderator of the town meeting, and therefore it was claimed that he himself never properly qualified and could not give the oath to the assessors. The opinion points out the mischievous and absurd result which would follow from a literal interpretation of the statute. If a vacancy should occur in the office of town clerk, the one who might be elected to fill the vacancy could never be sworn in, or if the town clerk were reelected he would have to administer the oath to himself. In holding that it was clear that the legislature never intended any such absurd result, the court said, page 286: "It seems obvious that, though the act says that all officers must be sworn by the town clerk, there was excluded from such category the town clerk himself who was expected to qualify in the usual manner as provided by Rev. Stat. 1930, Ch. 5, Sec. 19."

A reading of the opinion in *Norway Water District* v. *Norway Water Company,* 139 Me., 311, 30 A. (2d), 601, should give notice that, where legislative intent can be ascertained, this court does not look with favor on an effort to invalidate a charter to a municipal or quasi municipal corporation by insistence on ambiguities and incongruities in the act which defines the grant of powers given. There, as here, the validity of

a referendum election was attacked, and this court, quoting from *East Bay Util. Dist.* v. *Hadsell, et al,* 196 Cal., 725, 239, Pac. 38, reiterated the well established rule, "that, wherever possible from a standpoint of legal justice to validate an election, it is the duty of the court to do so."

The sitting justice, in ruling that the referendum election held on the second Monday of September, 1945, was valid and that the respondent is a member of the city council, gave effect to the clear purpose of the legislature in enacting the statute in question. The entry will be ·

*Exceptions overruled.*