Bennie COX, Petitioner,

v.

Ralph DAWSON, Respondent.

No. 86402.

Supreme Court of Oklahoma.

Feb. 6, 1996.

Larry Dickerson, Poteau, for Petitioner.

Jerry L. Smith, Tulsa, for Respondent.

KAUGER, Vice Chief Justice.

The issue of first impression presented is whether, after initial appointments were made to the Oklahoma Mining Commission (Commission) beginning October 1, 1986, the Legislature intended that subsequent appointments under 45 O.S.Supp.1995 § 1 [1] should be for terms ranging from one to seven years or that all appointments would be for seven years. We find that pursuant to 45 O.S.Supp.1995 § 1, appointments made after October 1, 1986, to the Oklahoma Mining Commission were intended to be for seven-year terms. We assume original jurisdiction and settle title to the office in the petitioner, Bennie Cox (Cox).[2]

## UNDISPUTED FACTS

In October of 1993, Cox was appointed to fill a vacancy to position number 2 on the Commission. The appointment expired on January 1, 1995; and Cox was reappointed for a seven-year term ending January 1, 2002. The Senate confirmed both appointments. On September 19, 1995, Governor Keating informed Cox by letter that he believed that position number 2 on the Commission carried only a two-year term rather than a seven-year one and that his appointment expired on January 1, 1995.[3] Governor Keating named the respondent, Ralph Dawson (Dawson), to Cox's seat on the Commission. Cox went to the Commission's regularly scheduled meeting on October 19, 1995. When he was denied the right to participate as a Commissioner, he filed this original action. Oral argument before the Court was held on December 6, 1995.

## PURSUANT TO 45 O.S.SUPP.1995 § 1, APPOINTMENTS MADE SUBSEQUENT TO OCTOBER 1, 1986, TO THE OKLAHOMA MINING COMMISSION WERE INTENDED TO BE FOR SEVEN-YEAR TERMS.

Cox urges us to construe 45 O.S.Supp.1995

1. Title 45 O.S.Supp.1995 § 1 provides in pertinent part:

 "A. There is hereby created the Oklahoma Mining Commission. The Commission shall be composed of nine (9) members to be appointed by the Governor with the advice and consent of the Senate.
 The Commission shall constitute a body corporate of the State of Oklahoma, and exercise by the Commission of the powers conferred by this act shall be deemed and shall be held to be an essential governmental function of the State of Oklahoma. Beginning January 1, 1986, one member shall be appointed for a term of one (1) year; one member shall be appointed for a term of two (2) years; one member shall be appointed for a term of three (3) years; one member shall be appointed for a term of four (4) years; one member shall be appointed for a term of five (5) years; two members shall be appointed for a term of six (6) years; and two members shall be appointed for a term of seven (7) years. Each member shall be a qualified elector of this state.
 The membership shall consist of at least one person with a background in engineering or geology; one person with a background in labor or workers' safety; one person with a background in agriculture or soil conservation; one person with a background in transporta-

 tion; one person with a background in economic development or banking; one person with a background in public utilities; one person with a background in natural resources; and two persons selected at large...."
 Although amended effective July 1, 1995, the quoted portion of the statute is identical to its 1986 predecessor except that the portion of the 1986 statute requiring that appointment of members "shall not be subject to any act to be known as the Oklahoma Boards and Commissions Uniform Districting Act" has been deleted. Therefore, all references will be to the current statute.

2. Even if Dawson's position is adopted, Cox was last appointed on January 1, 1994—even a two year term would not expire until December 31, 1995. Because we have determined that Cox is entitled to continue in his position on the Mining Commission, we need not address the minimum requirements of due process outlined in *Nesbitt v. Apple*, 891 P.2d 1235, 1240–41 (Okla.1995).

3. Cox's most recent appointment was made on November 18, 1994, for a term to begin on January 1, 1995. Even if we were to agree with Governor Keating's interpretation of 45 O.S.Supp.1995 § 1, see note 1, supra, a two-year appointment would not expire until December 31, 1996.

§ 1[4] as providing varying initial appointments ranging from one to seven years for the nine positions on the Mining Commission with all subsequent appointments intended to be for seven-year terms. Dawson asserts that the language of § 1 providing specific term limits for certain positions on the Mining Commission is clear and unambiguous and that the statute is not open to construction. We disagree.

The appointment scheme found in 45 O.S. 1995 § 1 became effective on October 1, 1986. The scheme provides for nine members to be appointed—one member each to serve terms ranging from one to five years with two members to serve six-year and seven-year terms. When § 1 was enacted, Governor George Nigh appointed nine members to the staggered terms outlined in the statute. It is undisputed that, except for those appointments made to unexpired terms,[5] all subsequent appointments have been for seven-year terms. The Oklahoma Senate has participated in the appointment process by confirming appointees to these seven-year terms.

**a. Because 45 O.S.Supp.1995 § 1 does not provide with certainty the terms of Mining Commission appointees, it is ambiguous and it is subject to construction.**

▇▇▇ The fundamental rule of statutory construction is to discern the Legislative intent. Generally rules of statutory construction will not be applied to a statute if the will is clearly expressed.[6] Nevertheless, because an ambiguity may arise other than from the words used by the Legislature, the application of constructive aids may be necessary.[7]

▇▇▇ Under our case law, we hesitate to construe any statute that appears clear and unambiguous. Only when the circumstances make it unmistakable that there has been a legislative oversight will the Court intervene to clarify statutory enactments. Here, the facts cannot be ignored. Counsel for the respondent, Ralph Dawson (Dawson), conceded before this Court in oral argument that the failure to make it clear that the terms in 45 O.S.Supp.1995 § 1 were seven-year staggered terms was a legislative oversight. Even without this concession, the repeated acts of the Chief Executives of this State from both parties, the Senate's nonpartisan confirmation of fourteen commissioners, and the Legislature's approval of the statute's interpretation by the approval of the Mining Commission's rules indicate that the wording of the statute itself is unclear.[8] These factors—the concession at oral argument that the failure to provide for seven-year terms subsequent to the initial appointments made under § 1 was a legislative oversight; the senatorial confirmations of multiple commissioners; the Legislature's acceptance and approval of Mining Commission Rules providing for seven-year terms; the Legislature's consistency in providing set terms for appointments to other boards and commissions [9]—all indicate that the Legislature intended the Mining Commission appointments to be for staggered seven-year terms. Because application of the literal words of § 1 would result in a scheme not intended by the Legislature, we construe the statute only to avoid an absurdity—a result clearly not intended by the Legislature—and to give the statute its intended import.[10]

---

4. Title 45 O.S.Supp.1995 § 1, see note 1, supra.

5. Title 45 O.S.Supp.1995 § 1(B) provides in pertinent part:
 "... Whenever a vacancy shall occur, the Governor shall appoint a person to fill the unexpired term of the vacant office...."

6. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 901 P.2d 800, 803 (Okla.1995); *Oglesby v. Liberty Mut. Ins. Co.,* 832 P.2d 834, 839–40 (Okla.1992); *Fuller v. Odom,* 741 P.2d 449, 452 (Okla.1987).

7. The manifest intent of the Legislature will control over the particular language used. *Janson v. Fulton,* 162 N.W.2d 438, 442 (Iowa 1968); *Bush*

*v. Oliver,* 86 Idaho 380, 386 P.2d 967, 970 (1963); *Farris v. Libby,* 141 Me. 362, 44 A.2d 216, 218 (1945); *People v. Carron,* 37 Cal.App.4th 1230, 44 Cal.Rptr.2d 328, 331 (Ct.App.1995).

8. See discussion and accompanying footnotes, pp. 9–14, infra.

9. See p. 16.

10. *Nelson v. State,* 288 P.2d 429, 437–38 (Okla. Ct.Crim.App.1955) (An ambiguous statute calls for resort to every source of interpretative assistance.).

Section 1 is ambiguous because of what it does not say—it does not delineate with certainty the terms of the appointees to the Mining Commission. Instead, it operates only as an initial-appointment statute guaranteeing that subsequent appointments will be staggered. On first reading, it appears to require initial appointment of members to certain time slots varying from one to seven years without making any provisions for subsequent appointments.[11] Having determined that the statute is unclear, we may resort to available sources of interpretative assistance to determine the Legislature's intent.[12]

 In *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 714 P.2d 1013, 1015 (Okla. 1986), this Court recognized the rule that the interpretation or construction of an ambiguous or uncertain statute by the agency charged with its administration is entitled to the highest respect from the courts, specifically when the administrative construction is definitely settled and uniformly applied. An agency which has long applied an interpretation may not reverse its position absent a cogent reason—i.e. a compelling, forceful, or conclusively convincing ground. We held in *Oral Roberts* that the Tax Commission's assertion that a different interpretation of the word "church" should be applied because the Legislature had so specified was not sufficient to reverse the agency's interpretation of the term. The holding was premised on the fact that the Legislature had not spoken to the issue.

 We also recognized in *Oral Roberts* that the Legislature had opportunities to amend the statute at issue and that its failure to do so, its slight amendments of the statute

and its re-enactment of the statute subsequent to the Tax Commission's interpretation resulted in the Legislature adopting the construction given by the agency. The *Oral Roberts* opinion contains the following quote from *Peterson v. Oklahoma Tax Comm'n*, 395 P.2d 388, 391 (Okla.1964):

> "... where the legislature convened many times during this period of administrative construction without expressing its disapproval, such silence may be regarded as acquiescence in or approval of the administrative construction."

We found that the Legislature's re-enactment of the statute at issue in *Oral Roberts* resulted in its adoption as a matter of law of the Tax Commission's construction.

**b. Pursuant to the Administrative Procedures Act, the Mining Commission has authority to adopt rules.**

The Mining Commission adopted Rule 460:1–3–1 on February 15, 1990. As authority for adopting Rule 460:1–3–1, Rule 460:1–1–1 states:

**"460:1–1–1. Purpose**

The rules, regulations and modes of procedure contained in this chapter are adopted to implement 45 O.S. (1981) Sections 1 et seq., as amended, establishing the Oklahoma Mining Commission (Commission) as 'the policy-determining agency for the Department of Mines' and setting out powers and duties of the Commission. Chapter 1 is adopted pursuant to the provisions of the APA, 75 O.S. Sections 250 et seq. and Sections 301 et seq.; in compliance with the Oklahoma Open Meeting Act, 25 O.S. Sections 301 et seq. and the Oklahoma

---

**11.** The two-judge dissent charges the majority with "indulging in judicial legislation by supplying language to the statute which just isn't there." The irony of this allegation lies in the fact that the dissent, in the very next sentence, states: "A plain reading of section 1 gives State Mining Commissioner, Bennie Cox, a two year term of office." Of course, 45 O.S.Supp.1995 § 1, see note 1, supra, does no such thing. Indeed, § 1 does not in any way make provision for or reference to subsequent appointment upon expiration of the original terms of office. The only way one can conclude that Cox's term was a two-year term is to supply language "which just isn't there." The two year interpretation is not

only not supported by the language of the statute, it is also not consistent with or supported by the clear legislative intent, the Agency's interpretation, or three different administrations' interpretations.

It is a quintessential function of any court of last resort to interpret ambiguous statutes and thereby resolve actual justiciable controversies before it. By resolving this controversy we are not legislating. Rather, we are simply performing our constitutional duty.

**12.** *Ex parte Higgs*, 97 Okla.Crim. 338, 263 P.2d 752, 756 (1953).

Open Records Act, 51 O.S. Sections 24A.1 et seq."

The rule was submitted to the Governor and to both houses of the Legislature on February 22, 1990. The Governor approved the rule on April 6, 1990; and legislative approval occurred on April 17, 1990.[13] The Rule provides:

**"Appointment, tenure and status**

The organization of the Commission is declared to be that as enumerated in 45 O.S. Section 1, as amended, or as may otherwise be established by law.

(1) The Commission, is comprised of nine (9) members, appointed by the Governor and subject to approval by the Senate, for seven (7) year staggered terms.

(2) The Commission shall constitute a body corporate of the State of Oklahoma with the authority to exercise all powers conferred upon it by, but not limited to 45 O.S. Section 1(A) as amended.

(3) Each member shall be a qualified elector of the State.

(4) The nine member Commission shall consist of persons with varied backgrounds; at least one in engineering or geology; one in labor or worker's safety; one in agriculture or soil conservation; one in transportation; one in economic development or banking; one in public utilities; one in natural resources; and two at large."

▮ It is clear that the Mining Commission interpreted § 1 to provide for seven-year staggered terms. The Legislature approved the Rule as written. It has convened in regular session three times since Rule 460:1–3–1 was promulgated. Although the Legislature amended 45 O.S. § 45 in 1995—four years after the Mining Commission adopted the rule construing the statute, it did not change the language relating to appointment of Commission members.[14] Legislative inaction in *Oral Roberts* prompted us to find that the Legislature had, through its silence, acquiesced in and approved the Tax Commission's interpretation of the statute relating to churches. Here, the Legislature has had the same opportunity to act and has chosen not to do so. In addition, by failing to disapprove Rule 460:1–3–1 within thirty days of its submission, it has approved the Mining Commission's interpretation of 45 O.S.Supp.1995 § 1.

c. **The Legislature has acquiesced in the Mining Commission's interpretation of 45 O.S.Supp.1995 § 1 providing for seven-year terms.**

Even if the intent is unclear in 45 O.S.Supp.1995 § 1, the Mining Commission's interpretation of the rule is substantiated by the Legislature's acquiescence in the Commission's construction.[15] The Legislature's silence evidences its approval of the administrative construction.[16] The Commission's own undeviating position with the regard to staggered term limits and the Legislature's disinclination to modify the substance of the statute has resulted in the construction being firmly entrenched.[17] Furthermore, the Legislature adopts an administrative construction of a statute when it amends the statute or re-enacts it without overriding the con-

**13.** Title 75 O.S.Supp.1989 § 308, the statute in effect when the Rule was promulgated, provides in pertinent part:

"... I. 1. Transmission of a rule for legislative review pursuant to the provisions of this section on or before April 1 of each year shall result in the approval of such rule by the Legislature if:
a. the Legislature is in session and has failed to disapprove such rule within thirty (30) legislative days after such rule has been so transmitted pursuant to subsection A of this section ..."

Section 308 has been amended on several occasions since 1989. However, the procedure for

Legislative approval through inaction remains unchanged.

**14.** See note 1, supra.

**15.** *Branch Trucking Co. v. State ex rel. Oklahoma Tax Comm'n*, 801 P.2d 686, 689 (Okla.1990); *Peterson v. Oklahoma Tax Comm'n*, 395 P.2d 388, 392 (Okla.1964).

**16.** *Branch Trucking v. Oklahoma Tax Comm'n*, see note 15 at 689–70, supra; *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 714 P.2d 1013, 1017 (Okla.1985).

**17.** *Id.*

struction.[18] Rule 460:1–3–1 was approved by the Legislature on April 17, 1990. **The Legislature amended 45 O.S. § 1 effective June 8, 1995, without altering the language the Mining Commission relied upon when it promulgated its term-limit rule.** It has adopted the Commission's interpretation of the statute.

 In addition to having adopted the Mining Commission's interpretation of 45 O.S.Supp.1995 § 1 and failing to object to the construction, the Senate has actively participated in the approval of at least fourteen appointments for full or partial seven year terms without objection.[19] The Legislature has followed this practice without deviation at least since 1988. If a legislative body is made repeatedly aware of a statute's operation, as it was during these confirmation procedures, that interpretation is given controlling weight. It will only be disregarded in cases of serious doubt.[20] Such doubt does not exist here.

**d. Despite its authority to do so, the Legislature has not attacked the Mining Commission's interpretation of 45 O.S.Supp.1995 § 1.**

 The Legislature has had numerous opportunities to attack the Mining Commission's interpretation of 45 O.S.Supp.1995 § 1. An emergency rule promulgated by the Commission in 1989 provides in pertinent part:

"200.1 Appointment, Tenure and Status. The organization of the Commission is declared to be that as enumerated in 45 O.S. Section 1, as amended, or as may otherwise be established by law.

(A) The Commission, is comprised of nine (9) members, appointed by the Governor and subject to approval by the Senate, for seven (7) year staggered terms...."

Under the Administrative Procedures Act, 75 O.S.Supp.1991 § 250 et seq., the Legislature may: 1) approve, delay, suspend, veto or amend any rule or proposed rule under review by joint resolution;[21] 2) disapprove a permanent or emergency rule at any time if it determines the rule to be inconsistent with legislative intent;[22] or 3) make an emergency rule ineffective through its disapproval.[23] It did none of these things. Rather, the Senate supported the Mining Commission's interpretation by following it in numerous confirmation proceedings.

**e. The Mining Commission's unchallenged interpretation has the force and effect of law and is consistent with appointment practices on other boards and commissions.**

 This Court is charged with the duty to take judicial notice of rules promulgated pursuant to the Administrative Procedures Act.[24] Rules promulgated by state

---

**18.** *Id.*

**19.** The appointments are: Charles W. Campbell; Rev. William L. Field; Virgin M. Smith, Jr.; John C. Birdwell; John Welton Kelly; Dean A. Thomas, Sr. (nomination rejected); A.E. Cranford; William S. Flanagan, Jr.; Lillian Watts Ray; Bennie Cox; Bette J. Medley; Earnest Achterberg; Ramon L. Jackson (died before confirmation completed); and Ken Breeding.

**20.** *Long v. Dick*, 87 Ariz. 25, 347 P.2d 581, 583–84 (1959).

**21.** Title 75 O.S.Supp.1992 § 250.2(B)(4) provides:

"The right to approve, delay, suspend, veto, or amend the implementation of any rule or proposed rule while under review by the Legislature by joint resolution."

**22.** Title 75 O.S.Supp.1992 § 250.2(B)(6) provides:

"The right to disapprove a permanent or emergency rule at any time if the Legislature determines such rule to be an imminent harm to the health, safety or welfare of the public or the state or if the Legislature determines that a rule is not consistent with legislative intent."

**23.** Title 75 O.S.Supp.1994 § 253(H) provides in pertinent part:

"If an emergency rule is of a continuing nature, the agency promulgating such emergency rule shall initiate proceedings for promulgation of a permanent rule pursuant to Sections 303 through 308.2 of this title.
2. Any promulgated emergency rule shall be made ineffective if:
 a. disapproved by the Legislature ..."

**24.** Title 75 O.S.1991 § 252 provides in pertinent part:

"... All courts, boards, commissions, agencies, authorities, instrumentalities, and officers of

boards and commissions are presumed to be valid until declared otherwise.[25] Rule 460:1–3–1 has not previously been attacked. Rules and regulations enacted by administrative agencies and boards pursuant to the powers delegated to them have the force and effect of law.[26]

■■■ Title 45 O.S.Supp.1995 § 1 sets nothing more than initial appointments. It does not specifically provide for the length of subsequent appointments. This oversight is obvious when looking at the statutes governing the appointment of other boards and commissions. In establishing other boards and commissions, the Legislature has specifically provided that the appointments made subsequent to an initial term in office will result in staggered terms for a specific period.[27] In each of these statutes, the subsequent appointment period is the longest term provided for an initial appointment. Under § 1, that is a seven-year term. Because construing the statute here to provide unequal fixed terms for specific slots on the Commission does not conform with the practice approved by the Legislature for any

the State of Oklahoma shall take judicial or official notice of any rule, amendment, revision, or revocation of an existing rule promulgated pursuant to the provisions of the Administrative Procedures Act...." *Butler v. Oklahoma Horse Racing Comm'n*, 874 P.2d 1278–79 (Okla.1994); *Lone Star Helicopters, Inc. v. State*, 800 P.2d 235, 237 (Okla.1990).

25. Title 75 O.S.1991 § 306 provides in pertinent part:
"... Rules promulgated pursuant to the provisions of the Administrative Procedures Act are presumed to be valid until declared otherwise by a district court of this state or the Supreme Court...."

26. *Toxic Waste Impact Group, Inc. v. Leavitt*, 755 P.2d 626, 630 (Okla.1988); *Texas Oklahoma Express v. Sorenson*, 652 P.2d 285, 287 (Okla.1982).

27. Oklahoma Aeronautics Commission, 3 O.S. 1991 § 84; Oklahoma Horse Racing Commission, 3A O.S.1991 § 201; Wildlife Conservation Commission, 29 O.S.1991 § 3–101; State Board for Property & Casualty Rates, 36 O.S.1991 § 331; Oklahoma Employment Security Commission, 40 O.S.1991 § 4–104; State Advisory Council, 40 O.S.1991 § 4–402; Board of Mental Health and Substance Abuse Services, 43A O.S. 1991 § 2–103 (Identical except express language included.); State Board of Medical Licensure and Supervision, 57 O.S.1991 § 503; State Board of Cosmetology, 59 O.S.1991 199.2; State Board of Medical Examiners, 59 O.S.1991 § 482 (Identical except express language included.); Oklahoma Real Estate Commission, 59 O.S.1991 § 858–202; State Board of Registration for Foresters, 59 O.S.1991 § 1203; Polygraph Examiners Board, 59 O.S.1991 § 1455; Board of Examiners for Speech Pathology and Audiology, 59 O.S.1991 § 1607; Oklahoma Licensed Professional Counselors Committee, 59 O.S.1991 § 1904; Alcoholic Beverage Laws Enforcement Commission, 37 O.S.1991 § 506.1; Oklahoma Licensed Marital and Family Therapist Committee, 59 O.S.1991 § 1925.4; State Board of Health, 63 O.S.1991 § 1–104; County Board of Health, 63 O.S.1991 § 1–201; City–County Board of Health, 63 O.S.1991 § 1–210; Con-trolled Industrial Waste Management Council, 63 O.S.1991 § 1–2003.1; Oklahoma Cerebral Palsy Commission, 63 O.S.1991 § 485.5; Arkansas–Oklahoma River Compact Commission, 82 O.S. 1991 § 1421; Turnpike Authority, 69 O.S.1991 § 1703; State Board of Education, 70 O.S.1991 § 3–101; State Board of Vocational and Technical Education, 70 O.S.1991 § 14–101; Oklahoma Educational Television Authority, 70 O.S.1991 § 23–105; Oklahoma School of Science and Mathematics Board of Trustees, 70 O.S.1991 § 1210; Board of Regents for the University of Oklahoma, 70 O.S.1991 § 3302; Board of Regents for Oklahoma State University, 70 O.S. 1991 § 3409; Board of Regents of Oklahoma Colleges, 70 O.S.1991 § 3507; Board of Regents of Oklahoma College of Liberal Arts, 70 O.S.1991 § 3602; Board of Regents of Northwestern Oklahoma College, 70 O.S.1991 § 3705; Board of Regents of Rogers State College, 70 O.S.1991 § 3802; Board of Trustees Governing Junior Colleges, 70 O.S.1991 § 4404; Board of Trustees of Tulsa Junior College, 70 O.S.1991 § 4413; McCurtain County Higher Education Board of Trustees, 70 O.S.1991 § 4427; Regents of Enid Higher Education, 70 O.S.1991 § 4430; Board of Trustees of University Center at Tulsa, 70 O.S.1991 § 4604; State Bureau of Investigation Commission, 74 O.S.1991 § 854; State and Education Employees Group Insurance Board, 74 O.S.1991 § 1304; Oklahoma Tourism and Recreation Commission, 74 O.S.1991 § 1802; State Capitol Preservation Commission, 74 O.S.1991 § 4103; Oklahoma Futures, 74 O.S.1991 § 5002.3; Medical, Technical and Research Authority of Oklahoma, 74 O.S.1991 § 7052; Oklahoma Water Resources Board, 82 O.S.1991 § 1085.1; Scenic Rivers Commission, 82 O.S. 1991 § 1461; County, Municipal and State Flood Plain Board, 82 O.S.1991 § 1605; Board of Regents for Agricultural and Mechanical Schools and Colleges, Okla. Const. art. 6, § 31(a); Board of Regents of Oklahoma Colleges, Okla. Const art. 13, § 1; Oklahoma State Regents for Higher Education, Okla. Const. art. 13, § 2, 70 O.S.1991 § 3202; Wildlife Conservation Commission, Okla. Const. art. 26, § 1; Public Welfare Commission, Okla. Const., art. 24, § 3; Judicial Nominating Commission, Okla. Const. art. 7–B, § 3.

other board or commission our research has revealed and because it would obviously result in a scheme not intended by the Legislature, we conclude that 45 O.S.Supp.1995 § 1[28] contains a lacuna—a gap in the law.[29] The gap is closed by acknowledging the clear language of Rule 460:1–3–1 providing for seven-year staggered terms. This avenue to clarify the statute has the Legislature's ratification—it approved the Mining Commission's interpretative rule, it has given the interpretation weight by its acquiescence in interpretation during the confirmation process, and it has adopted the construction through its failure to change the wording of the statute subsequent to the adoption of Rule 460:1–3–1.[30] We find that pursuant to 45 O.S.Supp.1995 § 1, appointments made after October 1, 1986, to the Oklahoma Mining Commission were intended to be for seven-year terms.

### f. Statutes are interpreted to avoid absurd or discriminatory consequences.

It is a well-settled principle of statutory construction that, where possible, courts will not allow statutes to have absurd or discriminatory consequences.[31] A construction that would lead to an absurdity or to discriminatory treatment will be avoided if it can be done without violating legislative intent.[32] If the interpretation advanced by Dawson is accepted—that each commissioner is appointed for the specific time period outlined in § 1, we would be constrained to hold the Legislature intended to discriminate between professions to be represented by membership on the Commission. Section 1 requires that membership shall consist of at least one person with a background in engineering or geology, one person with a background in labor or workers' safety, one person with a background in agriculture or soil conservation, one person with a background in transportation, one person with a background in economic development or banking, one person with a background in public utilities, one person with a background in natural resources, and two at large members. If Dawson's argument is followed to its logical conclusion, it would require this Court to determine that the Legislature intended for one member of these various disciplines to always be subject to shorter term limits than his/her colleagues. For example, if the person appointed to the one year term was educated in agriculture or soil conservation, that position—the one representing these interests—would always suffer from inexperience on the Commission. Certain interests would be diminished as this pattern of discrimination continued. There is nothing in the Mining Code to indicate that the Legislature intended this result.

Were we to agree with Dawson's arguments there would automatically be three vacancies created on the Mining Commission—only six positions would be lawfully occupied. One of the reasons for staggering terms on state boards and commissions is to ensure that an incumbent Governor will not stack these entities in the favor of one political party.

---

**28.** Title 45 O.S.Supp.1995 § 1, see note 1, supra.

**29.** *City of Oklahoma City v. Oklahoma Tax Comm'n,* 789 P.2d 1287, 1292 (Okla.1990); *State v. Goforth,* 772 P.2d 911, 914 (Okla.1989); *Maule v. Independent School Dist. No. 9,* 714 P.2d 198, 203 (Okla.1985); R. Aldisert, "Hard Core Judicial Process Problems Facing Judges in the 80's", p. 34 (1982).

**30.** No constitutional challenge has been raised to 45 O.S.Supp.1995 § 1, see note 1, supra. Nevertheless, the Legislature's recodification of a statute in a decennial recompilation has been found to purge a statute of prior constitutional infirmities. *Allen v. State ex rel. Bd. of Trustees of*

*Oklahoma Uniform Retirement System For Justices & Judges,* 769 P.2d 1302, 1305–06 (Okla. 1988).

**31.** *Strelecki v. Oklahoma Tax Comm'n,* 872 P.2d 910, 920 (Okla.1993).

**32.** *Id.* The Legislature will not be presumed to have intended a vain or absurd result. *Ledbetter v. Alcoholic Bev. Laws Enforcement,* 764 P.2d 172, 179 (Okla.1988); *LeFlore v. Reflections of Tulsa, Inc.,* 708 P.2d 1068, 1075 (Okla.1985); *Johnson v. Johnson,* 674 P.2d 539, 542 (Okla. 1983); *Farris v. Cannon,* 649 P.2d 529, 531 (Okla.1982); *Texas County Irrigation v. Cities Serv. Oil Co.,* 570 P.2d 49, 51 (Okla.1977).

## CONCLUSION

Although 45 O.S.Supp.1995 § 1 [33] appears clear upon its face, it does not delineate a scheme for appointments made after the initial appointments of October 1, 1986, to the Oklahoma Mining Commission that is consistent with legislative intent, with legislative or executive practice, with the rules promulgated and approved by the legislative branch, or with any other legislatively-approved practice on other boards or commissions.[34] Construing the statute in the manner advanced by Dawson would result in the Mining Commission always having interests that are underrepresented. The statute is ambiguous.

No one factor in isolation has convinced us that a literal reading of § 1 would result in a consequence the Legislature did not intend. However, there is a combination of compelling factors we cannot ignore:

1) **Counsel for Dawson conceded at oral argument that the failure to provide for seven-year terms subsequent to the initial appointments made under § 1 was a legislative oversight.**

2) **Governors of both parties have interpreted § 1 to provide for seven-year appointments.**

3) **The Senate has repeatedly confirmed, without partisan opposition, subsequent terms for seven years.**

4) **The Mining Commission promulgated rules pursuant to the Administrative Procedures Act implementing § 1 which clearly provide for subsequent appointments to be for seven-year terms.**

5) **Despite numerous opportunities to do so, the Legislature has not challenged the Mining Commission's interpretation of § 1. (It should be noted that the circumstances here present a gubernatorial challenge not a legislative one.)**

6) **The Legislature approved the Mining Commission rule interpreting § 1.**

7) **Nothing in § 1, as enacted, states what period of time appointments made after the initial appointment of the Commission is made will be.**

8) **In all other statutory schemes for boards and commissions, subsequent appointments are for the longest term provided for an initial appointment.**

9) **To construe the statute literally would result in a discriminatory pattern repeatedly favoring one interest over another.**

It is only because of this overwhelming evidence of Legislative intent that the appointments to the Oklahoma Mining Commission made subsequent to October 1, 1986, were to be for seven-year terms that we have undertaken to construe 45 O.S.Supp.1995 § 1. Under these unmistakable factors pointing to legislative intent, we assume original jurisdiction and settle title to the office in Bennie Cox.

**ORIGINAL JURISDICTION ASSUMED; TITLE TO OFFICE SETTLED IN THE PETITIONER, BENNIE COX.**

ALMA WILSON, C.J., HARGRAVE and SUMMERS, JJ., and CHAPEL, Special Judge, concur.

HODGES, LAVENDER, SIMMS and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

The court assumes original cognizance and holds that the incumbent commissioner, Bennie Cox [Cox], has title to position number 2 on the Oklahoma Mining Commission [Commission] for a seven-year term that expires January 1, 2002. The court's pronouncement, which rests on its construction of 45 O.S.Supp.1995 § 1,[1] declares that by that section's provisions *all gubernatorial appointments* to the Commission, to be made *after* October 1, 1986, are intended to extend for a term of seven years.

---

**33.** Title 45 O.S.Supp.1995 § 1, see note 1, supra.

**34.** See note 27, supra, and accompanying discussion.

**1.** For the terms of 45 O.S.Supp.1995 § 1, see *infra* note 3.

I cannot accede to the court's analysis of this controversy. *Much too much* is decided by today's opinion. It is impossible to afford *full* relief on Cox's plea in the nature of a writ of quo warranto. Were I to measure Cox's right to his office *solely* by the plain language of 45 O.S.Supp.1995 § 1, his *two-year term did not expire until January 1, 1996.* Until Cox's successor is *legally appointed* and *qualified,* he may not be removed from office except for cause.[2] In the meantime, he *must* be allowed to participate *fully* in all matters before the Commission. *That is all I would settle for now.*

**I**

### HISTORY OF SUCCESSION

The text of 45 O.S.Supp.1995 § 1(A)[3] provides that an appointment to the Commission's position number 2 *shall be* for a two-year term. Thus far five appointments have been made to that post: (a) Amzi Gossard was *initially* appointed for a *two*-year term (ending January 1, 1988);[4] (b) Charles Campbell was then appointed for a *seven*-year term (ending January 1, 1995);[5] (c) Bennie Cox, the petitioner herein, was *first appointed* October 8, 1993 to fill Campbell's unexpired term[6] and then *reappointed* on November 18, 1994 for a *new seven*-year term (ending January 1, 2002);[7] and (d) Ralph Dawson [Dawson] was appointed October 16, 1995 for a "term ending October 16, 1996".[8]

Cox urges: (1) by the provisions of 45 O.S.Supp.1995 § 1 the legislature had intended that, following the *initial* gubernatorial appointments, *all* commissioners will serve *staggered seven-year* terms, and (2) his appointment in 1994 was for a *seven*-year period, to begin January 1, 1995 and to end

---

2. *See* the terms of 45 O.S.Supp.1995 § 1(B), *infra* note 3.

3. The pertinent terms of 45 O.S.Supp.1995 § 1 are:
 "A. There is hereby created the Oklahoma Mining Commission. The Commission shall be composed of nine (9) members to be appointed by the Governor with the advice and consent of the Senate.
 The Commission shall constitute a body corporate of the State of Oklahoma, and exercise by the Commission of the powers conferred by this act shall be deemed and shall be held to be an essential governmental function of the State of Oklahoma. Beginning January 1, 1986, one member shall be appointed for a term of one (1) year; *one member shall be appointed for a term of two (2) years;* one member shall be appointed for a term of three (3) years; one member shall be appointed for a term of four (4) years; one member shall be appointed for a term of five (5) years; two members shall be appointed for a term of six (6) years; and two members shall be appointed for a term of seven (7) years. Each member shall be a qualified elector of this state.
 \* \* \* \* \* \*
 B. The Commission shall meet at least six times annually. A majority of the Commission shall constitute a quorum. Commission members may be *removed only for cause.*
 *Whenever a vacancy shall occur, the Governor shall appoint a person to fill the unexpired term of the vacant office.* Each member of the Commission shall take and subscribe to the constitutional and statutory oath of office prior to the performance of any duties as a Commission member." (Emphasis added.)

4. Governor George Nigh made the first appointment to position number 2 on the Commission, which was confirmed by the Senate (Senate Journal for the Second Regular Session of the Fortieth Oklahoma Legislature, pp. 563–565 (1986)).

5. Order of Appointment (by Governor Henry Bellmon), filed May 19, 1988; confirmed by the Senate (Senate Journal for the Second Regular Session of the Forty-first Oklahoma Legislature, pp. 938–939 (1988)). The order provides that Campbell's appointment is for "an initial *seven* (7) year term ending January 1, 1995." (Emphasis mine.) Campbell resigned in 1993.

6. Order of Appointment (by Governor David Walters), filed October 8, 1993; confirmed by the Senate on May 24, 1994 (Senate Journal for the Second Regular Session of the Forty-fourth Oklahoma Legislature, pp. 902–908 (1994)).

7. Order of Appointment (by Governor David Walters), filed November 18, 1994; confirmed by the Senate on April 11, 1995 (Senate Journal for the First Regular Session of the Forty-fifth Oklahoma Legislature, pp. 731–733 (1995)).

8. Order of Appointment (by Governor Frank Keating), filed October 16, 1995. The Senate has not been in session since Dawson's appointment, which states that "Dawson is succeeding Bennie Cox." The Governor's September 19, 1995 letter to Cox notes that his two-year Commission term *expired* January 1, 1995. *This date is clearly in error. Cox's term, if indeed for two years, expired January 1, 1996.*

January 1, 2002.[9] According to *Dawson* (as well as to Governor Keating),[10] the *plain language* of 45 O.S.Supp.1995 § 1 unequivocally establishes a *two-year* term for the post here in contest (position number 2).[11]

## II

### DAWSON WAS APPOINTED TO AN OFFICE THAT WAS LEGALLY OCCUPIED BY ANOTHER

#### A.

A *de facto officer* is one who (a) occupies an office that is in existence,[12] (b) under color of title by virtue of an otherwise valid appointment, and (c) has become disqualified to hold that position.[13] In contrast, a *de jure officer* is one who is *legally appointed and qualified* to exercise the duties of the office.[14] A *de jure* officer who occupies the post be-

yond the prescribed legal (statutory or constitutional) term falls into the latter (*de jure*) category. This is so because by legislative mandate a holdover is *legally* in office until a successor is appointed and qualified.[15] An appointment for a term longer than that provided by statute does not transform the appointee into a *de facto* officer.[16] The governor's power to fill vacancies created by the resignation of a state officer *does not include* the authority to *limit, enlarge* or otherwise *condition the term* during which the appointee is to serve.[17]

*Assuming* that, as Dawson claims, the term of office for position number 2 is only two years, *the office in question was vacant* when Cox was appointed in *1993* (for the remainder of his predecessor's term) and later in *1994* (at the expiration of a perceived seven-year term). Although Cox *may be* subject to removal after the end of his legal

**9.** Support for this view, Cox urges, is found in the legislature's failure to reject Commission rules which contemplate seven-year terms and in the Senate's confirmation of several seven-year appointments for not only position number 2 but also other positions on the Commission. Because he was reappointed November 18, 1994 for a seven-year term ending January 1, 2002, Cox argues, there was no vacancy in position number 2 at the time of Dawson's appointment. According to Cox, he has committed no act or dereliction that would justify his removal or ouster from that office.

**10.** Governor Keating's September 19, 1995 letter to Cox explains that (a) he was appointed to a position which by law has a two-year term and (b) his term expired *January 1, 1995* [sic]. The order of appointment (filed October 16, 1995) states that Dawson is "to serve a term, ending October 16, 1996."

**11.** Dawson argues that Cox's initial 1993 appointment is inefficacious because the governor was without authority to appoint anyone to that position in excess of the statutory term. According to Dawson, until Governor Keating appointed Dawson in 1995 to fill an unexpired two-year term ending January 1, 1996, Cox was acting merely as a *de facto* officer under a *defective appointment.*

**12.** In at least one case this court treated the occupant of a non-existent judicial office as a *de facto* judge. *State ex rel. Rucker v. Tapp,* Okl., 380 P.2d 260, 268 (1963).

**13.** *Wixson v. Green,* Okl., 521 P.2d 817, 818 (1974); *Ajax Contractors, Inc. v. Myatt,* Okl., 424 P.2d 30, 33–34 (1967) ("an 'officer de facto' is

one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the * * * functions of the office are exercised by one who was in the actual possession of it under color of title"); *Rucker, supra* note 12 at 268; *Mid–Continent Building Co. v. Board of Equalization,* 184 Okl. 525, 88 P.2d 626 (syl.3) (1939) (a board member who forfeits his right to office by accepting an incompatible office is still a *de facto* member of the board); *Sheldon v. Green,* 182 Okl. 208, 77 P.2d 114, 115 (1938) (if the office actually exists, possession plus color of title to the office is sufficient to make the incumbent a *de facto* officer; a judge *de facto* differs from a *mere usurper of the office* who undertakes to act *without any color of right* ).

**14.** *Sheldon, supra* note 13 at 115.

**15.** The pertinent terms of 51 O.S.1991 § 15 provide that "[e]very appointed officer shall hold his office until the end of the term for which the officer whom he succeeds was elected or appointed, and *until his successor is elected and qualified.*" (Emphasis added.) *Abitbol v. Priore,* Okl., 797 P.2d 335, 336–337 (1990).

**16.** The length of time an appointee can serve as successor office holder, which is fixed by law, is not a factor to be considered in the process of assessing whether an officer is serving *de jure* or *de facto*. *Abitbol, supra* note 15 at 336; *Burford v. Board of Com'rs,* 63 Okl. 42, 162 P. 780, 782 (1917).

**17.** *Abitbol, supra* note 15 at 336.

term (January 1, 1996), an appointment for a longer period than the legally prescribed term does not *per se* transmute one's *de jure* into a *de facto* status.

Even if there were an infirmity in Cox's claim to the office, Dawson has to prevail on the strength of his own demand, not on the weakness of Cox's title.[18] Dawson's claim *is far from superior to* Cox's. Regardless of whether Cox was holding a two-year or a seven-year term, Dawson's appointment is *void* because at its effective date (October 16, 1995) *no* vacancy was in existence in the post to which he was appointed. Governor Keating *clearly* was *mistaken* in his belief that Cox's two-year term had expired January 1, 1995 instead of 1996.[19]

I would declare that Cox is *now* in (or should be restored to) office. Dawson is *without* a viable claim. The latter was appointed to fill an office when *no* vacancy existed. *There is no justiciable [20] controversy before us over the expiration of Cox's term for want of a contender with colorable title or standing [21] to demand the office instanter.* Until Dawson has received a presently effective appointment and qualifies for the office

as Cox's successor, Cox's claim to a longer term than that indicated by the plain language of § 1 [22] need not be reached for judicial settlement. That controversy presents, at this juncture, nothing more than an academic or abstract issue.[23]

**B.**

Cox informs us that Dawson has participated at the 1995 November and December Commission meetings. Cox's *ouster* from the Commission proceedings was apparently accomplished *sans* legal advice from the Attorney General.[24] In the event that the Commission is indeed depriving the incumbent of his right to participate, I would *declare* that Cox is now in office as a *de jure* commissioner. I would also *hold* that Cox *stands entitled* to vote at all Commission meetings.

Nothing more need be decided today. Whether Cox's term does extend for *two* or *seven* years should be saved for the day when Dawson arms himself with a presently effective gubernatorial appointment giving him at least some color of title and passes muster as qualified to take the office.

18. *Wood v. Sympson*, Okl., 833 P.2d 1239, 1248 (1992); *Atlantic Richfield Co. v. State*, Okl., 659 P.2d 930, 934–935 (1983); *Dearing v. State*, Okl., 642 P.2d 226, 229 (1982).

19. See text *supra* note 8.

20. To be appropriate for judicial inquiry, a controversy must be justiciable. Included within the rubric of *justiciability* is a controversy which (a) is definite and concrete, (b) concerns legal relations among parties with adverse interests, and (c) is real and substantial so as to be capable of a decision granting or denying specific relief. *Hendrick v. Walters*, Okl., 865 P.2d 1232, 1238 (1993); *Application of State ex rel. Dept. of Transp.*, Okl., 646 P.2d 605, 609 (1982); *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–242, 57 S.Ct. 461, 464–465, 81 L.Ed. 617 (1937); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324–325, 56 S.Ct. 466, 472–473, 80 L.Ed. 688 (1936); *Hatfield v. King*, 184 U.S. 162, 165–166, 22 S.Ct. 477, 478, 46 L.Ed. 481 (1902).

21. Standing refers to a person's legal right to seek relief in a judicial forum. *Hendrick, supra* note 20 at 1236; *Application of State ex rel. Dept. of Transp., supra* note 20 at 609; *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 (1982). It must be predicated on an injury to an interest which is

"direct, immediate and substantial." *Toxic Waste Impact Group, Inc. v. Leavitt*, Okl., 890 P.2d 906, 913 (1995) (Opala, J., concurring); *Democratic Party of Oklahoma v. Estep*, Okl., 652 P.2d 271, 274 (1982); *Application of State ex rel. Dept. of Transp., supra* note 20 at 609; *Underside, supra* at 517; *Cleary Petroleum Corp. v. Harrison*, Okl., 621 P.2d 528, 530 (1980).

22. For the terms of 45 O.S.Supp.1995 § 1, see *supra* note 3.

23. *Hughey v. Grand River Dam Auth.*, Okl., 897 P.2d 1138, 1143 (1995); *Northeast Okl. Elec. Coop. v. State*, Okl., 808 P.2d 680, 683 n. 7 (1991); *Morton v. Adair County Excise Bd.*, Okl., 780 P.2d 707, 711 (1989); *Westinghouse Elec. v. Grand River Dam Auth.*, Okl., 720 P.2d 713, 718 (1986).

24. Whether the legal advice of the Attorney General be considered binding or merely advisory, a state official or agency is deemed protected from liability when heeding the advice given by the chief law officer of the state, at least until a clear judicial pronouncement would indicate a different course of conduct. *See* 74 O.S.1991 §§ 18 and 18b(A)(5); *Hendrick, supra* note 20 at 1243; *Allen v. State*, Okl., 769 P.2d 1302, 1308 n. 33 (1988).

## SUMMARY

I would confine today's pronouncement to declaring that (a) Cox has a presently effective claim to the office; (b) Dawson is *sans* colorable title and (c) Cox *must* be allowed to participate in Commission proceedings. I would not, as the court does today, settle the controversy over the length of Cox's term of office. That issue is *not presently justiciable.*[25]

SIMMS, Justice, dissenting:

I agree that original jurisdiction should be assumed, however, I would grant the requested relief in the nature of quo warranto. The statute in question, 45 O.S.1991, § 1, is plain and unambiguous on its face. The majority seems to find it ambiguous, not because of what it says, but because of what it doesn't say. In effect, the majority indulges in judicial legislation by supplying language to the statute which just isn't there.

A plain reading of § 1 gives State Mining Commissioner, Bennie Cox, a two year term of office. Because his appointment was effective January 1, 1994, his term expired January 1, 1996, at which time the vacancy became subject to being filled by gubernatorial appointment with the advice and consent of the Senate. *See* 45 O.S.1991, § 1(B). If the Legislature intends otherwise, it is free to amend § 1.

By reason of Okla. Const., Art 23, § 10, Petitioner Cox should be permitted to continue to perform the duties of his office until his successor is duly qualified.

I must respectfully dissent.

I am authorized to state that Justice Lavender joins with me in the views expressed herein.

---

**25.** *Application of State ex rel. Dept. of Transp., supra* note 20 at 609; *Hendrick, supra* note 20 at 1238.