Dear Senator Easley:
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. May the Corporation Commission, in enforcing pipeline safety standards pursuant to 52 O.S. 5 (1991), require Oklahoma pipeline operators to establish and maintain annual face-to-face meetings with public safety officials throughout the pipeline's operations in Oklahoma?
 2. Are alternatives to annual face-to-face meetings available?
¶ 1 Congress has directed the United States Department of Transportation ("USDOT") to set minimum safety standards for pipelines and pipeline facilities. See 49 U.S.C.A. 60102(a)(1). In compliance, USDOT promulgated regulations now found at49 C.F.R. 192.615 (gas) and 195.402 (hazardous liquids) (1998). USDOT declines to enforce the regulations if an appropriate state agency certifies it is doing so. See 49 U.S.C.A. 60105. If USDOT finds that a certified "state authority is not enforcing satisfactorily compliance with applicable safety standards prescribed under this chapter," USDOT may reject the state authority's certification and assert its jurisdiction or take other appropriate action. 49 U.S.C.A. 60105(f). A state with a current certification may adopt its own safety standards for intrastate pipeline facilities and transportation, but only if those standards meet or exceed the minimum standards prescribed by USDOT. See 49 U.S.C.A. 60104(c). The Corporation Commission ("Commission") has the responsibility to promulgate and enforce rules establishing minimum safety standards for pipelines in Oklahoma. See 52 O.S. 5/52 O.S. 47.3. The Commission has since submitted certificates of enforcement to USDOT.
¶ 2 Prior to 1991, the Commission adopted the federal regulations in Oklahoma by reference, "with all amendments and appendices thereto." OAC 165:20-5-21 (gas) and 165:20-7-1
(hazardous liquids). Under the rules, operators of gas and hazardous liquids pipelines must "establish and maintain liaison with appropriate fire, police, and other public officials."49 C.F.R. 192.615(c) (gas) and 195.402(c)(12) (hazardous liquids). The issue you present is whether an operator in Oklahoma must have annual face-to-face meetings with each public official in the operating area, or whether other means may be employed to meet the regulations.
¶ 3 On February 4, 1993, the Director of Regulatory Programs for USDOT's Office of Pipeline Safety issued a brief letter interpretation of Sections 192.615(c) and 195.402(c)(12), concluding that operators must meet face-to-face with public officials and maintain an ongoing face-to-face liaison thereafter. A 1996 letter from USDOT's Director of the Southwest Region, Pipeline Safety, recommended that "meetings be held as often as necessary . . . to stay current" and set forth several factors to consider in determining the frequency of the meetings.
¶ 4 In federal jurisprudence interpretations by agency officials, even without adversarial tempering, have long served as guidance for courts and should be abandoned "only where justified by very good reasons." Skidmore v. Swift Co., 323 U.S.134, 140 (1944). The "power authoritatively to interpret its own regulations is [presumed to be] a component of . . . [an] agency's delegated lawmaking powers." Martin v. OccupationalSafety and Health Review Comm'n, 499 U.S. 144, 151 (1991).
¶ 5 In light of respect given to agency interpretations by federal courts, federal regulations which result in Oklahoma's regulations merit comparable treatment. A federal agency's current interpretation of its own regulations is not dispositive, but will be given deference by the courts as long as it "sensibly conforms to the purpose and wording of the regulations."Northern Indiana Pub. Serv. Co. v. Porter County Chapter ofIzaak Walton League of Am., Inc., 423 U.S. 12, 15 (1975). In Oklahoma, an agency's settled interpretation of its governing laws and rules is given "the highest respect" from the courts.Cox v. Dawson, 911 P.2d 272, 277 (Okla. 1996). Considering all these factors, the Commission is within its discretion in interpreting the rules in ways that parallel those of the federal government which generated the rules in the first place.
¶ 6 Neither the federal regulations nor the interpretations thereof specifically require an annual frequency to operators' meetings with public safety officials. If a public safety official does not cooperate with an operator in the establishment of a liaison, without promulgated rules the Commission must address the consequences on a case-by-case basis to determine if a liaison has in fact been established. If the Commission desires, it could add appropriate language to its rules to define "liaison" or establish other requirements for the purposes of enforcing the regulations in Oklahoma, as long as the state requirements meet or exceed the federal criteria.
¶ 7 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. In applying 52 O.S. 5 (1991), the Corporation Commission may require Oklahoma pipeline operators to have annual face-to-face meetings with public safety officials throughout the pipeline's operations area in Oklahoma as part of the Commission's enforcement of pipeline safety procedures codified at OAC 165:20-5-21 (gas) and 165:20-7-1 (hazardous liquids).
 2. The Commission has the discretion to decide whether alternatives to annual face-to-face meetings are available in satisfying the regulatory requirements.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
WALTER W. JENNY, JR. ASSISTANT ATTORNEY GENERAL