776 So.2d 1158 (2001)
Gayle Louise SCHULTZ f/k/a Gayle Louise Doyle
v.
Wavy H. DOYLE and Era L. Doyle.
No. 2000-C-0926.
Supreme Court of Louisiana.
January 17, 2001.
Rehearing Denied February 16, 2001.
*1159 Mark C. Landry, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, for Applicant.
Robert G. Nida, Gold, Weems, Bruser, Sues & Rundell, Alexandria, for Respondent.
CALOGERO, Chief Justice.
Having secured a money judgment in Texas against Mr. and Mrs. Wavy Doyle, a Louisiana couple residing in Alexandria, Louisiana, plaintiff, Gayle Louise Schultz, filed a petition in Rapides Parish to make her Texas judgment executory under the Uniform Enforcement of Foreign Judgments Act, La.Rev.Stat. § 13:4241 et seq. After a series of procedural encounters,[1] the district court held a hearing on whether the Texas judgment was entitled to Full Faith and Credit in Louisiana. The trial judge ruled for the defendants and held that the plaintiffs Texas judgment would not be made executory in Louisiana. The court of appeal affirmed that judgment.[2] *1160 Then plaintiff prevailed upon this Court to grant a writ of certiorari to review the judgments of the two lower courts.[3]
The principal legal issue is whether the Full Faith and Credit Clause of the United States Constitution requires that this Court recognize and allow enforcement of the Texas judgment in Louisiana.[4] Respondents opposed that recognition and enforcement and now present for our consideration, besides the contention that the Full Faith and Credit Clause does not require recognition of the judgment, arguments involving due process, the absence of jurisdiction in the Texas court over defendants in the underlying Texas lawsuit, and the unconstitutionality of the punitive damage award.
For the reasons which follow, we hold that in the outset lawsuit, the Texas courts did establish jurisdiction over defendants, Wavy H. Doyle[5] and Era L. Doyle, did afford them due process of law, and did render a judgment in Texas that became final and enforceable in Texas. That judgment is entitled to respect and enforcement in Louisiana by virtue of the Full Faith and Credit Clause of the United States Constitution and Louisiana's Uniform Enforcement of Foreign Judgments Act, La.Rev.Stat. § 13:4241 et seq.
The case has a torturous history, beginning in 1996 with a divorce proceeding in Texas between Jerry Doyle and his former wife, Gayle Louise Schultz. In July 1996, just before their son Jerry Doyle filed for divorce in Texas, the respondents, Wavy and Era Doyle, visited him in Dallas, where he and Ms. Schultz were residing. Subsequent to that visit, and following Jerry's filing of the divorce petition, Ms. Schultz sued Jerry and Mr. and Mrs. Doyle. Ms. Schultz claimed that Mr. and Mrs. Doyle conspired with their son to conceal community assets from her, and thereby defrauded her of her interest in the community. The Doyles allowed their son to hire his lawyer, one Sharon Kiel, to defend them along with him in that lawsuit. Ultimately, judgment was rendered against Mr. and Mrs. Doyle for $100,000.00 punitive damages alone. The judgment was rendered on a scheduled trial date of which Mr. and Mrs. Doyle were aware and after they consented to Ms. Kiel withdrawing as their attorney.
What took place in Texas before that trial date is, of course, important to the proper resolution of the case and will be discussed hereinafter. What happened after rendition of that judgment was this: Mr. and Mrs. Doyle hired another lawyer who timely filed for new trial and presented their case for a new trial at a hearing which Mr. and Mrs. Doyle and their new lawyer attended in Texas. After a lengthy hearing, the district court denied their motion for a new trial. Mr. and Mrs. Doyle did not appeal the money judgment or the denial of the motion for new trial, and the Texas judgment became final and enforceable in Texas.
On August 8, 1998, the district court in Rapides Parish conducted a hearing to determine whether the Texas judgment was entitled to full faith and credit. Respondents, the Doyles, argued that the Texas court did not have personal jurisdiction over them because they had not had sufficient minimum contacts in Texas. Additionally, the Doyles alleged that they did not purposely avail themselves of Texas jurisdiction. Ms. Schultz argued that the issue of personal jurisdiction was foreclosed *1161 because that issue had already been decided by the Texas court, and according to Schultz, the Texas judgment was entitled to full faith and credit and was enforceable in Louisiana.
On April 3, 1999, the Rapides Parish district court ultimately concluded that the Doyles had not submitted themselves to the jurisdiction of the Texas court in the earlier lawsuit. Thus, the district court held the Texas judgment would not be executed in Louisiana. The district court reasoned that "the Doyles never physically appeared in a Texas court." Further, although the Doyles consented to the withdrawal of the attorney representing them, "they did not appear however to understand the ramifications of that legal maneuvering supposedly done on their behalf." Finally, the district court reasoned that the Doyles did not authorize their attorney to withdraw an earlier filed pleading (a special appearance objecting to jurisdiction over them) the withdrawal of which, coupled with an earlier filed alternative answer, subjected them to personal jurisdiction in Texas.
Upon plaintiff's appeal, the court of appeal affirmed the judgment of the district court. Schultz v. Doyle, et al., No. 99-1473 p. 1 (La.App. 3 Cir. 3/1/00)(unpublished opinion). The Louisiana appellate court disagreed with the Texas court's finding personal jurisdiction over the Doyles. The court reasoned that the Doyles never gave their attorney permission to subject them to the jurisdiction of the Texas court. Id. The court of appeal relied upon Hatfield v. King 184 U.S. 162, 22 S.Ct. 477, 46 L.Ed. 481 (1902), which held that the unauthorized acts of an attorney cannot subject a party to the personal jurisdiction of a court. Id. at 6. Additionally, the court reasoned that it was important that the Doyles never thought that they needed representation in Texas. Finally, the court held that, if the Doyles' attorney was authorized to act on their behalf, she was only authorized to file the special appearance objecting to the jurisdiction, all other documents filed by her (alternative answer, discovery, motion for rule 13 sanctions and withdrawal of special appearance) being unauthorized.
In this court, the Doyles claim that: (1) the full faith and credit clause does not prevent a Louisiana court from reexamining the personal jurisdiction question; (2) personal jurisdiction cannot arise from an attorney's unauthorized waiver of his clients' constitutional due process rights; and (3) the punitive damage award has constitutional infirmities.
The undisputed facts are these. The Doyles were served pursuant to the Texas long-arm statute.[6] The Doyles, through their son Jerry, retained attorney Sharon Kiel to represent them in the Texas litigation. On March 7, 1996, the Doyles through Kiel, filed a special appearance and general denial, contesting personal jurisdiction in the Texas proceedings. However, Kiel later filed a motion to withdraw the previously-filed special appearance, and that motion was granted. Additionally, Kiel filed a motion for rule 13 sanctions against Ms. Schultz under rule 25 of the Texas Rules of Civil Procedure alleging that the Doyles were an elderly couple with serious medical conditions and that the suit against them was groundless and brought in bad faith and for the purpose of harassment. Without question, the Doyles were represented by counsel of their choosing who through pleading and appearance was representing them in the Texas court. The Doyles never gave their attorney any specific instructions, nor placed any restrictions on her representation of them.
On September 13, 1996, Kiel filed a motion to withdraw as the Doyles' counsel of *1162 record and the Doyles were served with a copy of that motion. In the motion to the Texas court, the Doyles were informed of the then impending October 21, 1996 trial date and given an opportunity to contest the motion. In response, by letter addressed to Kiel, copied to the court, dated September 20, 1996, the Doyles consented to the motion to withdraw. That letter was attached to the motion and order granting the withdrawal. On October 21, 1996, the Texas trial was held. Although the Doyles were informed of that trial date, they failed to secure another attorney and failed to appear. Jerry Doyle, without Ms. Kiel or any other counsel, appeared and participated in the trial. On December 19, 1996, the Texas trial judge signed the Judgment awarding Ms. Schultz $50,000.00 in compensatory damages against Jerry Doyle and $100,000.00 in punitive damages jointly and severally against Jerry Doyle and his parents, Wavy and Era Doyles, $12,000.00 in attorney's fees and interest at the rate of twelve per cent per year on the total judgment until paid.
On January 17, 1997, the Doyles filed a timely motion for new trial requesting that the Texas court set aside the judgment. They alleged that their failure to appear at the trial was the result of accident or mistake, rather than an intentional or conscious indifference to the court. The Doyles alleged that the Texas court did not have jurisdiction over them. Additionally, the Doyles alleged that if their initial special appearance was waived by Attorney Kiel, it was waived in error. Finally, the Doyles alleged that the punitive damage award was constitutionally defective because the judgment against them is for punitive damages without any compensatory damages. The Doyles personally appeared along with their newly retained counsel at the Texas hearing on the motion for new trial on February 6, 1997. The trial judge denied the motion for new trial. The Doyles did not appeal the monetary judgment or the judgment denying their motion for a new trial.
The Doyles' main contention, here as well as in the Texas proceedings, is that their lawyer, Kiel, had no assent from them to voluntarily dismiss the special appearance. In fact, Kiel's doing so, the Doyles contend, was ultimately to their prejudice (especially in light of their later neglect to appear at trial, we might add). The attorney Kiel may well have been negligent and perhaps committed legal malpractice. Her pleading withdrawing the special appearance was motivated chiefly by her self-interest (seeking attorney fees). Such conduct was in attorney Kiel's interest and was not in their interest, according to the Doyles. The Doyles contest the Texas courts' jurisdiction over them and the constitutionality of the punitive damage award. Thus, all of these issues contested here were previously placed before the Texas court.
Before any proceedings can be taken against a defendant or defendants, it is essential either that they be brought into court by service of process or that a lawful appearance be made in their behalf. Hatfield v. King, 184 U.S. 162, 166, 22 S.Ct. 477, 46 L.Ed. 481 (1902). Here, it is undisputed that the Doyles were served with citation under the Texas long-arm statute. It is also undisputed that the Doyles retained Sharon Kiel to represent them in the Texas dispute. Additionally, the Doyles did not place any special instructions or restrictions upon Kiel in connection with her representation of them. In her representation of the Doyles, Kiel filed a special appearance and a general denial in the Texas proceedings on behalf of the Doyles, later withdrawing the special appearance while coincidentally filing for the rule 13 sanctions requesting that the Doyles recover reasonable expenses, including reasonable attorneys' fees and any other legal or equitable relief to which they were entitled.
The requirement that a court have personal jurisdiction recognizes and protects an individual liberty interest, which flows *1163 from the Due Process Clause. See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702-03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). "[T]he test for personal jurisdiction requires that `the maintenance of the suit ... not offend "traditional notions of fair play and substantial justice."'" Insurance Corp. of Ireland, 456 U.S. at 703, 102 S.Ct. 2099, (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945), (in turn quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))).
The Supreme Court in Insurance Corp. of Ireland held that the defendant insurers, by submitting the question of jurisdiction to the trial court, agreed to abide by the court's procedures and ruling. See also Superior Supply Co. v. Associated Pipe & Supply Co., 515 So.2d 790, 794 (La.1987) (adopting the holding of Insurance Corp. of Ireland supra). Individual actions cannot change the powers of sovereignty, although the individual can subject himself to powers from which he may otherwise be protected. Insurance Corp. of Ireland, 456 U.S. at 703, 102 S.Ct. 2099. "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived. In McDonald v. Mabee, [243 U.S. 90, 37 S.Ct. 343, 61 L.Ed. 608 (1917).] the Court indicated that ... an individual may submit to the jurisdiction of the court by appearance." Id. at 704, 37 S.Ct. 343.
The Supreme Court in Insurance Corp. of Ireland held further that:
The requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue. These characteristics portray it for what it is a legal right protecting the individual. The plaintiff's demonstration of certain historical facts may make clear to the court that it has personal jurisdiction over the defendants as a matter of law i.e. certain factual showings will have legal consequencesbut this is not the only way in which the personal jurisdiction of the court may arise. The actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not.
* * *
The expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights. Insurance Corp. of Ireland 456 U.S. at 704-05, 102 S.Ct. 2099.
Thus, the manner in which a court determines whether it has personal jurisdiction may include a variety of legal rules and presumptions, as well as straightforward factfinding. Id.
The Doyles, as stated above, hired an attorney through their son Jerry to represent them upon being served with Schultz's Third Supplemental and Amending Petition filed in Dallas County, Texas in which they were named "Counter Respondents" (defendants). Their retained counsel filed certain pleadings, namely, the special appearance containing as well a general denial, the motion to withdraw the special appearance, the motion for rule 13 sanctions, and the motion to withdraw.
The Doyles were free to ignore the original service of the Texas proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding. Insurance Corp. of Ireland, 456 U.S. at 706, 102 S.Ct. 2099 (citing Baldwin v. Iowa State Traveling Men's Assn., 283 U.S. 522, 525-26, 51 S.Ct. 517, 75 L.Ed. 1244 (1931)). However, by submitting to the jurisdiction of the Texas court for the limited purpose of challenging jurisdiction, the Doyles agreed to abide by that court's determination on the issue of jurisdiction: That decision is res judicata on that issue in any future proceedings. See id. at 706-07 (citing Baldwin, 283 U.S. at 524, 51 S.Ct. 517; *1164 American Surety Co. v. Baldwin, 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932)).
The Full Faith and Credit Clause, Article IV, Section 1, of the Constitution of the United States, mandates that a judgment of a state court should have the same credit, validity, and effect in every other court of the United States that it has in the state where it is pronounced. Hampton v. McConnel, 16 U.S. (3 Wheat.) 234, 4 L.Ed. 378 (1818). The Supreme Court of the United States has continuously interpreted the Full Faith and Credit Clause to mean that full faith and credit is to be accorded only when the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person. Thompson v. Whitman, 85 U.S. (18 Wall.) 457, 21 L.Ed. 897 (1873); Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Therefore, a state court judgment can be made a judgment in a sister state "only if the court purporting to render the original judgment has power to render such a judgment." Williams, 325 U.S. at 229, 65 S.Ct. 1092. That is to say, the court that rendered the judgment must have had jurisdiction over both the subject matter and the person.
The general rule is that "a judgment is entitled to full faith and credit even as to questions of jurisdictionwhen the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Public policy dictates that there be an end to litigation; "that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." Id. (citing Baldwin, 283 U.S. at 525, 51 S.Ct. 517). This doctrine should apply in every case where one voluntarily appears, presents his case and is fully heard. He should, in the absence of fraud, be bound thereafter by the judgment of the court to which he has submitted his cause. Id. More specifically, in the context of personal jurisdiction, the United States Supreme Court has noted that only one trial of the issue of personal jurisdiction is necessary: "The principles of res judicata apply to questions of jurisdiction as well as to other issues." Duke, 375 U.S. at 113, 84 S.Ct. 242 (citing Treinies v. Sunshine Mining Co., 308 U.S. 66, 78, 60 S.Ct. 44, 84 L.Ed. 85 (1939)). The Texas litigation came to an end when the Doyles decided not to appeal the Texas judgment. It is improper for a Louisiana court to act in an appellate capacity and overrule the judgment of the Texas court. The Texas judgment is entitled to Full Faith an Credit under the United States Constitution.
The Doyles' allegations that Kiel, without their consent or knowledge, withdrew the special appearance objecting to personal jurisdiction in the Texas proceedings, and the allegation that the punitive damage award is constitutionally defective need not be addressed by this court because the Doyles raised these claims in Texas when they filed their motion for new trial. In fact, the Doyles personally and with counsel appeared at the hearing on the motion. The Texas court denied the motion for new trial. The judgment of the Texas trial court may be reviewed only by appeal, and that judgment may not be collaterally attacked. Pilie & Pilie v. Metz, 547 So.2d 1305, 1312 (La.1989) (citing Durfee v. Duke, 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186; Stoll v. Gottlieb, 305 U.S. 165, 171-72, 59 S.Ct. 134, 83 L.Ed. 104 (1938); and Davis v. Davis, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1938)). The Doyles did not appeal the Texas trial court's monetary judgment or the denial of the motion for new trial. Consequently, the issues of the unauthorized representation, defective punitive damage award and jurisdiction are res judicata. The Texas judgment is entitled to full faith and credit.

DECREE
The judgment of the court of appeal is reversed. Plaintiffs Texas judgment *1165 against the Defendants, Wavy and Era Doyle, is entitled to Full Faith and Credit in this state. The case is remanded to the district court with instructions to order the Texas judgment made executory under the Uniform Enforcement of Foreign Judgments Act, La.Rev.Stat. 13:4241 et seq.
JUDGEMENT OF COURT OF APPEAL REVERSED; REMANDED TO DISTRICT COURT.
LEMMON, J., concurs and assigns reasons.
LEMMON, J., concurring.
Upon initial service under the long-arm statute, defendants, through their attorney, challenged the personal jurisdiction of the Texas court by a special appearance. Because defendants, through their attorney, withdrew that challenge, the Texas court did not litigate the issue of personal jurisdiction before rendering the money judgment against defendants. Therefore, res judicata applies, not because the issue of jurisdiction was fully and fairly litigated, but because objections to jurisdiction were waived by the attorney of record,[1] and because the issue of the attorney's authority to waive objections to jurisdiction was tried on motion for new trial and was decided against defendants in a judgment that has now acquired the authority of the thing adjudged.
The Texas court ruled that defendants made a general appearance[2] and were therefore subject to the jurisdiction of that court. Defendants now contend that the general appearance, as well as the withdrawal of the special appearance, were not authorized by them. However, they raised these same contentions by motion for new trial in the Texas court, which held a hearing on the issue of the attorney's lack of authority. Apparently, the Texas court ruled that defendants did not bear their burden. See 1 Robert C. Casad & William B. Richman, Jurisdiction in Civil Actions § 3-1(vi)(3d ed.1998). That issue cannot be raised anew in Louisiana.
NOTES
[1] After Ms. Schultz filed her original petition in Rapides Parish to make the Texas judgment executory, the Doyles were served with a copy of the notice of filing (pursuant to La.Rev.Stat. § 13:4243). Ms. Shultz then filed a motion for order recognizing the Texas judgment, and the district court signed that order. Then the defendants filed an opposition to Ms. Shultz's petition and order. Additionally, the defendants sought to enjoin the seizure and sale of their home. The district court issued an order recalling its prior order recognizing the Texas judgment. Ms. Shultz sought writs from the court of appeal, which affirmed the district court's ruling because Ms. Shultz had executed on the Texas judgment before the time had elapsed for taking a suspensive appeal from the order recognizing it. Schultz v. Doyle, et al., 98-1113 p. 1 (La.App. 3 Cir. 02/03/99), 727 So.2d 691. This court denied writs. Schultz v. Doyle, et al., 99-0994 (La.5/28/99), 743 So.2d 670. The case was returned to the district court.
[2] Schultz v. Doyle, et al., No. 99-1473 p. 1 (La.App. 3 Cir. 3/1/00)(unpublished opinion).
[3] Schultz v. Doyle, et al., 00-0926 (La.5/26/00), 762 So.2d 626.
[4] U.S. Const. Art. IV, Section 1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."
[5] During the pendency of this action Mr. Wavy H. Doyle died. Wavy H. Doyle Jr., the testamentary executor of the elder Doyle's succession, was substituted as respondent in these proceedings.
[6] On February 28, 1996, the Secretary of State of Texas forwarded to the Doyles, via certified mail, return receipt requested, the Citation and Third Amended Original Counter Petition, pursuant to Texas Civil Practices and Remedies Code § 17.044. On March 4, 1996, Era Doyle signed the return receipt.
[1] If defendants' attorney, upon being employed to represent them, had never filed a special appearance to question jurisdiction, but had simply answered plaintiff's petition, then objections to jurisdiction would have been waived. In the present case, the waiver occurred when the attorney withdrew the special appearance.
[2] Defendants, through their attorney, made a general appearance in the Texas litigation by filing a general denial and by affirmatively seeking sanctions for a groundless suit filed in bad faith for purpose of harassment. The wisdom of these pleadings is a matter between defendants and their former attorney, but defendants, for purposes of recognition of the Texas judgment, are bound by the on-the-record actions and decisions of the attorney who, according to defendants' admission, was their representative until the attorney withdrew from that representation.