# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-349


**DEWAYNE DOUGLAS DOWD, SR., INDIVIDUALLY
AND AS ADMINISTRATOR OF THE ESTATE OF
CORA LEE DOWD (DECEASED)**

**VERSUS**

**HELENA EMERGENCY PHYSICIANS, PLLC, ET AL.**

\*\*\*\*\*\*\*\*\*\*
ON APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2021-2719
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JONATHAN W. PERRY
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.


**AFFIRMED.**

Kriste T. Utley
Ross A. Ledet
BOYKIN & UTLEY
400 Poydras Street, Suite 1540
New Orleans, Louisiana 70130
(504) 527-5450
COUNSEL FOR PLAINTIFF/APPELLANT:
     Dewayne Douglas Dowd, Et Al.

Gary McGoffin
John S. Cook
DURIO, MCGOFFIN, STAGG & GUIDRY
220 Heyman Boulevard
P. O. Box 51308
Lafayette, Louisiana 70505
(337) 233-0300
COUNSEL FOR DEFENDANT/APPELLEE:
     Hospital Physician Partners, Inc. and
     The Schumacher Group of Delaware, Inc.

Nicholas Sigur
GACHASSIN LAW FIRM
400 East Kaliste Saloom Road, Suite 6100
P. O. Box 80369
Lafayette, Louisiana 70598-0369
(337) 235-4576
COUNSEL FOR DEFENDANT/APPELLEE:
     Schumacher Group of Louisiana, Inc.

Cliff A. Lacour
NEUNER PATE
1001 West Pinhook Road, Suite 200
Lafayette, Louisiana 70503
(337) 237-7000
COUNSEL FOR DEFENDANT/APPELLEE:
     Helena Emergency Physicians, PLLC

James H. Gibson
Stacy N. Kennedy
GIBSON LAW PARTNERS, LLC
2448 Johnston Street
P. O. Box 52124
Lafayette, Louisiana 70505
(337) 761-6023
COUNSEL FOR DEFENDANT/APPELLEE:
     TSG Resources, Inc.

**PERRY, Judge.**

At issue in this appeal are judgments which denied the enforcement of a foreign, out of state, judgment against parties not named in those judgments and the dismissal of separate fraud-based tort claims against these parties on the basis of prescription. We affirm.

## FACTS AND PROCEDURAL HISTORY

On September 22, 2009, Helena Emergency Physicians, PLLC ("HEP"), an Arkansas business entity, entered into a Physician Independent Contractor Agreement ("the Agreement") which governed the work of Dr. Arthur Levy ("Dr. Levy") at Helena Regional Medical Center ("Helena Regional"), an Arkansas hospital.

As part of the Agreement, HEP was required to obtain medical malpractice insurance which met the requirements of Helena Regional. Pursuant to that obligation, HEP obtained insurance from Oceanus Insurance Company ("Oceanus").

On October 6, 2010, Cora Lee Dowd ("Mrs. Dowd") went to the emergency room at Helena Regional with complaints of a stomachache, vomiting, fever, and severe pain. Dr. Levy treated Mrs. Dowd and sent her home with pain medication. Two days later, Mrs. Dowd returned to Helena Regional and underwent an emergency appendectomy. At the time of her surgery, Mrs. Dowd's appendix had ruptured and spread infection throughout her body. She died six days later on October 15, 2010.

In 2012, Mrs. Dowd's surviving spouse, Dwayne Douglas Dowd, Sr. ("Mr. Dowd") filed suit individually and on behalf of Mrs. Dowd's estate against various defendants,[1] none of whom are involved in the present action.

---

[1] The two other defendants, Phillips Hospital Corporation d/b/a Helena Regional Medical Center and Dr. James Major, were found free from fault, and no fault was assessed to Mrs. Dowd.

A jury found Dr. Levy 100% at fault and liable for Mrs. Dowd's death. It awarded damages individually to Mr. Dowd and to Mr. Dowd as Administrator of the Estate of Mrs. Dowd in the sum of $2,806,053.86. On June 14, 2016, the Arkansas court memorialized the jury verdict against Dr. Levy and awarded interest of 10% per annum until paid.

After the judgment was rendered, Dr. Levy filed for bankruptcy protection. While the bankruptcy proceedings progressed, Mr. Dowd was granted permission from the Bankruptcy Court to seek recovery directly from Oceanus. In September 2017, Oceanus was placed into liquidation. Mr. Dowd filed a claim in Oceanus's receivership. On October 31, 2017, Dr. Levy was granted a full discharge in bankruptcy.

On May 28, 2021, Mr. Dowd, individually and as Administrator of Mrs. Dowd's estate, filed suit in Lafayette Parish against HEP, Hospital Physician Partners, Inc. ("HPP"), The Schumacher Group of Louisiana ("Schumacher-LA"), TSG Resources, Inc. ("TSG"), The Schumacher Group of Delaware ("Schumacher-DE"), and Certain Underwriters at Lloyds (collectively, "the Defendants"). In that suit, Mr. Dowd sought to make the Arkansas judgment executory and requested a declaratory judgment finding the Defendants liable for Dr. Levy's debts under various theories of "corporate successor liability, successor liability based upon a fraudulent scheme to escape liability, single business enterprise, alter ego/piercing the corporate veil, and third party beneficiary doctrine." In response, the Defendants filed various exceptions of no cause of action, prescription, failure to join necessary parties, vagueness, and collateral attack on the bankruptcy judgment.

2

After conducting a hearing, the trial court granted the Defendants' exception of collateral attack on the bankruptcy judgment and dismissed Mr. Dowd's request for declaratory relief as well as the demand to execute the Arkansas judgment. Additionally, the trial court granted the Defendants' exception of prescription regarding Mr. Dowd's alleged claims of fraud.[2] After the trial court denied Mr. Dowd's motion for new trial, this appeal followed.

## APPELLANT'S ASSIGNMENTS OF ERROR

In his brief to this court, Mr. Dowd has assigned the following two errors:

1. The trial court erred in holding that Dr. Levy's debt to Appellant, as evidenced by the Levy Judgment, cannot be collected, and enforced against Appellees based on Dr. Levy's Chapter 7 Bankruptcy discharge, even though none of the Appellees were parties to the bankruptcy, and the discharge order specifically preserves the right to collect debts from liable third parties.

2. The trial court erred in dismissing the tort claims as prescribed whenever those claims were not known or knowable until less than one year prior to when suit was filed, and Appellees presented insufficient evidence to carry their burden of proof.

## LAW AND DISCUSSION

The trial court granted the Defendants' exception of collateral attack on the bankruptcy judgment and dismissed all claims related to the Arkansas judgment. Rulings by the trial court on exceptions to the petition are reviewed de novo in the appellate court as they present questions of law. *Dixon v. City of Alexandria*, 16-880 (La.App. 3 Cir. 5/31/17), 222 So.3d 739. "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164. "[T]he phrase Upon the record on appeal has major significance. It means that the court can render any judgment supported by the pleadings and the

---

[2] As noted in Mr. Dowd's appellate brief, there are two claims that are not at issue in this appeal—separate contract claims and claims against potential insurers of Dr. Levy and the Schumacher defendants.

3

evidence." *Morgavi v. Mumme*, 258 La. 587, 270 So.2d 540, 542 (La.1972) (citing *Summerell v. Phillips*, 247 So.2d 542 (La.1971)). Finding it unnecessary to delve into the exception based on collateral attack on the bankruptcy judgment, we do not discuss that exception, and we will address the enforcement of the Arkansas judgment and matters related to that judgment in another manner.

*Overview—No Cause of Action*

The failure to disclose a cause of action may be noticed by either the trial or appellate court on its own motion. La.Code Civ.P. art. 927(B).

"The function of the peremptory exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition." *Fink v. Bryant*, 01-987, p. 3 (La. 11/28/01), 801 So.2d 346, 348. It "is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading." *Id*. at 348-49. "The exception is triable on the face of the papers, and . . . the court must presume that all well-pleaded facts in the petition are true" with "[a]ll reasonable inferences . . . made in favor of the nonmoving party[.]" *City of New Orleans v. Bd. of Dirs. of La. State Museum*, 98-1170, p. 9 (La. 3/2/99), 739 So.2d 748, 755.

The burden of proof is on the exceptor. *Id*. The parties may not introduce any evidence in support of or to controvert the exception. La.Code Civ.P. art. 931. "An exception of no cause of action is likely to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief . . . or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings." *City of New Orleans*, 739 So.2d at 756.

4

In *McCalmont v. McCalmont*, 19-738, p. 7 (La.App. 3 Cir. 4/29/20), 297 So.3d 1057, 1063-64, we stated:

> "An exception is a means of defense, other than a denial or avoidance of the demand, used by the defendant, whether in the principal or an incidental action, to retard, dismiss, or defeat the demand brought against him." La.Code Civ.P. art. 921. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La.Code Civ.P. art. 923. . . . If the grounds of the peremptory exception cannot be removed by amending the petition, the claims shall be dismissed. La.Code Civ.P. art. 934.

## APPELLANT'S ARGUMENT

Mr. Dowd argues that although the Arkansas judgment sought to be enforced in Louisiana does not cast any of the Defendants in judgment, he may nonetheless seek to enforce the judgment against them. Relying on *Berg v. Zummo*, 03-281 (La.App. 4 Cir. 7/02/03), 851 So.2d 1223, *writ denied*, 03-2209 (La. 11/21/03), 860 So.2d 546, and *Dishon v. Ponthie*, 05-659 (La.App. 3 Cir. 12/30/05), 918 So.2d 1132, he contends that Louisiana courts have allowed a judgment to be enforced against an affiliated entity not named in the original judgment.

## APPELLEES' ARGUMENT

The Defendants contend that the judgment sought to be enforced is a foreign judgment and that its enforcement is governed by La.Code Civ.P. art. 2541. As such, it can only be enforced against the judgment debtor. None of the Defendants are judgment debtors. Thus, they contend that Mr. Dowd has failed to state a cause of action to have the Arkansas judgment made executory against them, and the judgment cannot form the basis for declaratory judgment on the issues of vicarious and solidary liability.

## ANALYSIS

In the present case, the foundation of Mr. Dowd's action is a petition to make the Arkansas judgment of June 14, 2016, executory in this state against all named defendants and a petition for declaratory judgment seeking to have the Defendants liable under that judgment.

From the outset, we find Mr. Dowd's reliance on *Berg* and *Dishon* distinguishable. Neither case involved the enforcement of a foreign judgment.

The supreme court stated in *Schultz v. Doyle*, 00-926, pp. 9-10 (La. 1/17/01), 776 So.2d 1158, 1164:

> The Full Faith and Credit Clause, Article IV, Section 1, of the Constitution of the United States, mandates that a judgment of a state court should have the same credit, validity, and effect in every other court of the United States that it has in the state where it is pronounced. *Hampton v. McConnel,* 16 U.S. (3 Wheat.) 234, 4 L.Ed. 378 (1818). The Supreme Court of the United States has continuously interpreted the Full Faith and Credit Clause to mean that full faith and credit is to be accorded only when the jurisdiction of the court in another state is not impeached, either as to the subject matter or the person. *Thompson v. Whitman,* 85 U.S. (18 Wall.) 457, 21 L.Ed. 897 (1873); *Williams v. North Carolina,* 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). Therefore, a state court judgment can be made a judgment in a sister state "only if the court purporting to render the original judgment has power to render such a judgment." *Williams,* 325 U.S. at 229, 65 S.Ct. 1092. That is to say, the court that rendered the judgment must have had jurisdiction over both the subject matter and the person.
>
> The general rule is that "a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Durfee v. Duke,* 375 U.S. 106, 111, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Public policy dictates that there be an end to litigation; "that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Id.* (citing *Baldwin,* 283 U.S. at 525, 51 S.Ct. 517). This doctrine should apply in every case where one voluntarily appears, presents his case and is fully heard. He should, in the absence of fraud, be bound thereafter by the judgment of the court to which he has submitted his cause. *Id.*

In the present case, the jurisdiction of the Arkansas court has not been questioned and no fraud has been urged in obtaining the judgment against Dr. Levy. Mr. Dowd has presented the judgment of the Arkansas court and requested that it be made executory in Louisiana. This judgment, which is attached to the petition, determined Dr. Levy to be solely at fault and cast him alone in judgment.

> A party seeking recognition or execution by a Louisiana court of a judgment or decree of a court of the United States . . . may bring an ordinary proceeding against the judgment debtor in the proper Louisiana court, to have the judgment or decree recognized and made the judgment of the Louisiana court.

La.Code Civ.P. art. 2541.

The only judgment debtor specified in the Arkansas judgment is Dr. Levy. None of the Defendants in the petition to make the Arkansas judgment executory were party to or designated as judgment debtors in that judgment. Accordingly, Mr. Dowd has failed to state a cause of action against any of the Defendants to make the Arkansas judgment executory or to hold these Defendants liable for the Arkansas judgment as sought in the petition for declaratory relief. Therefore, because the grounds for the peremptory exception cannot be removed, we grant the peremptory exception of no cause of action and dismiss Mr. Dowd's petition to make the Arkansas judgment executory as well as the demand for declaratory relief premised on that judgment.

## PRESCRIPTION ON FRAUD-BASED TORT CLAIMS

The trial court found that Mr. Dowd's fraud-based tort claims filed on May 25, 2021, were prescribed because they were filed more than a year after he knew or should have known of the fraud. It reasoned that the tort claims were prescribed because Mr. Dowd had facts available to him that should have provoked further

7

investigation as of October 4, 2017, the date Mr. Dowd made a claim in Oceanus's liquidation.

Mr. Dowd argues that the fraud claims are partially based on the contention that the Defendants acted in concert to underfund Oceanus so that it could not satisfy its obligation to pay the judgment against Dr. Levy. He contends that neither Dr. Levy's bankruptcy nor the liquidation of Oceanus gave rise to the fraud committed by the Defendants. To the contrary, he asserts that he did not become aware of the concealed insurance information until September of 2021 and filed suit within one year of that date.

The Defendants brief mirror the trial court's reasoning. Additionally, they contend that even as early as 2013, when Dr. Levy was deposed, information came to light about Oceanus's participation in a "risk pool" which should have provoked Mr. Dowd to further investigate the financial viability of Oceanus.

In *Arton v. Tedesco*, 14-1281, p. 3 (La.App. 3 Cir. 4/29/15), 176 So.3d 1125, 1128, *writ denied*, 15-1065 (La. 9/11/15), 176 So.3d 1043, this court stated:

> The exception of prescription is governed by La.Code Civ.P. art. 927. The standard of review of a grant of an exception of prescription is determined by whether evidence was adduced at the hearing of the exception. If evidence was adduced, the standard of review is manifest error; if no evidence was adduced, the judgment is reviewed simply to determine whether the trial court's decision was legally correct. *Allain v. Tripple B Holding, LLC*, 13-673 (La.App. 3 Cir. 12/11/13), 128 So.3d 1278. The party pleading the exception of prescription bears the burden of proof unless it is apparent on the face of the pleadings that the claim is prescribed, in which case the plaintiff must prove that it is not. *Id*.

In the present case, there was evidence reviewed by the trial court. Thus, the applicable standard of review is manifest error.

It is well accepted that under the manifest error standard of review, "a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong." *Smith v. La. Dep't of Corrs.*, 93-1305 (La. 2/28/94),

8

633 So.2d 129, 132. "To reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Stobart v. State Dep't of Transp. and Dev.*, 617 So.2d 880, 882. In making this determination, "[t]he appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently." *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So.2d 270, 279. If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

"Liberative prescription is a mode of barring of actions as a result of inaction for a period of time." La.Civ.Code art. 3447. "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La.Civ.Code art. 3492. As defined in La.Civ.Code art. 1953:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

Fraud is a delictual action subject to the one-year prescriptive period set out in La.Civ.Code art. 3492. *Cerullo v. Heisser*, 16-558 (La.App. 5 Cir. 2/8/17), 213 So.3d 1232.

In his petition, Mr. Dowd alleged that HEP, HPP, Schumacher-LA, TSG, and Schumacher-DE (collectively, "the "Schumacher Defendants"), took specific and directed action for the purpose of rendering Oceanus insolvent and unable to satisfy its obligations[,]" "directed the transactions which left Oceanus insolvent and unable

to pay their creditors[,]" and that "[t]hese transitions were directed by or with approval from Dr. David Schillinger, HPP's founder/CMO, HEP's incorporator/organizer, and Chairman of the Board of Directors of Oceanus." And, in conclusion, he alleged that "[t]hese actions were taken for the purpose of defrauding Plaintiff."

In its oral reasons for judgment, the trial court recognized that it was not clear from Mr. Dowd's petition that the fraud-based claim had prescribed. Recognizing that the burden then shifted to the Defendants, the trial court stated:

> All I have is the petition in front of me, and I have the evidence of the deposition [of Dr. Levy] which includes information about all of the named defendants here. And I have a September 21, 2017 order declaring Oceanus insolvent. And October 4, 2017, the plaintiff submitted a proof of claim in the liquidation.
>
> So we know that, as of October 4, 2017, the plaintiff was on notice that Oceanus was insolvent. And then I – for whatever reason, I wrote down that plaintiff became aware of facts arising to present litigation during the bankruptcy proceedings [of Dr. Levy], which the doctor was discharged from bankruptcy, October 31, 2017.
>
> So it tends to suggest to me that the plaintiff should have known something back in the fall of 2017. To me, I am inclined to think that prescription began to run, back in the fall of 2017.
>
> . . . .
>
> And the defendant produced evidence to the Court to suggest that, yes, it has prescribed because there was knowledge that came about at the latest of October 4th of 2017 which would have put the plaintiff on notice that there was [sic] issues with the fulfillment of the judgment that is now null and void.

Our review of the record shows that Mr. Dowd's petition which, in part, raised a fraud-based tort claim, was not prescribed on its face. Thus, the burden of proof shifted to the Defendants to negate that these claims were timely filed. *Bailey v. Khoury*, 04-620 (La. 1/20/05), 891 So.2d 1268. The trial court considered evidence that included Dr. Levy's deposition taken on May 22, 2013, Dr. Levy's Voluntary

10

discharge in bankruptcy, the Oceanus liquidation order, and Mr. Dowd's proof of claim in Oceanus's liquidation.

In his deposition, Dr. Levy provided the following facts: (1) at the time of his malpractice, he was under contract with HPP to provide emergency room services to Helena Regional; (2) his contract required HEP to obtain malpractice insurance for him; (3) his medical malpractice insurer was Oceanus,[3] and it provided coverage in the amount of one million dollars; (4) there could have been other insurance policies at the various other hospitals where he worked which were organization specific and the emergency room staffing companies have the policies; and (5) he disclosed the Schumacher Group[4] as his staffing company prior to HPP.

The record further shows that Mr. Dowd received a favorable judgment on June 14, 2016, and Dr. Levy filed a Chapter 7 Voluntary Petition for bankruptcy on November 7, 2016. On April 12, 2017, well before Dr. Levy was discharged in bankruptcy on October 31, 2017, Mr. Dowd was granted relief from the automatic stay to pursue Dr. Levy's insurance provider to satisfy the Arkansas judgment. On September 21, 2017, Oceanus, identified as a Risk Retention Group,[5] was placed in

---

[3] The transcript refers to Oceanics. In is undisputed that this is a typographical error, and the insurer should be Oceanus.

[4] Dr. Levy did not differentiate between Schumacher Group-LA and Schumacher Group-DE nor did he reference TSG.

[5] In the liquidation order, the following detailed information is provided in part, as follows:

> [Oceanus] is a South Carolina Industrial Insured Captive (stock) Corporation formed as a risk retention group, organized and licensed pursuant to Chapters 87 and 90 of Title 38 of the South Carolina Code, and is owned and capitalized by its insured physician and physician group members.
>
> . . . .
>
> [Oceanus] issues non-assessable medical malpractice professional insurance policies with primary coverage up to $1,000,000 per occurrence with $3,000,000 in the aggregate. Excess limits are provided above the primary coverage and are full reinsured.

liquidation. Shortly thereafter, on October 4, 2017, Mr. Dowd filed a proof of claim for $3,173,291.80 in the matter of "Oceanus Insurance Company, a Risk Retention Group, (Oceanus) in liquidation."

> Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start [the] running of prescription.

*Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510-11 (citations omitted).

After reviewing the jurisprudence and the facts of this case, we find the trial court was not manifestly erroneous when it concluded that Mr. Dowd's fraud-based tort claims filed on May 25, 2021, were prescribed because they were filed more than a year after he knew or should have known of the fraud. Although Dr. Levy's bankruptcy or Oceanus's liquidation, taken alone, may have been insufficient to provide notice to commence prescription, as of October 2017, Mr. Dowd had or should have had sufficient knowledge to begin the running of prescription. He knew of the possibility of other insurance, that Dr. Levy had a connection with the Schumacher Group, that Dr. Levy had filed and was discharged in bankruptcy, and that Oceanus was underfunded requiring it to be placed in liquidation. A reasonable course of investigation at that time would have garnered information sufficient to commence this tort action. Mr. Dowd's lawsuit filed on May 25, 2021, comes too late to urge these fraud-based claims. Therefore, we affirm the trial court's factual findings and uphold its ruling on the issue of prescription.

12

## DECREE

For the reasons stated, we affirm the judgment of the trial court. Costs of this appeal are assessed to Dwayne Douglas Dowd, Sr., individually and as Administrator of the Estate of Cora Lee Dowd.

**AFFIRMED.**